STATE of Wisconsin, Plaintiff-Respondent,

v.

Cherise A. RAFLIK, Defendant-Appellant.

Supreme Court

*No. 00–1086–CR. Oral argument September 12, 2001.—Decided December 4, 2001.*

2001 WI 129

(Also reported in 636 N.W.2d 690.)

597

For the defendant-appellant there were briefs by *Michael J. Fitzgerald, Dean A. Strang,* and *Fitzgerald & Strang, S.C.,* Milwaukee, and *Michael J. Fitzgerald, Craig W. Albee,* and *Glynn, Fitzgerald & Albee, S.C.,* Milwaukee, and oral argument by *Michael J. Fitzgerald.*

For the plaintiff-respondent the cause was argued by *Stephen W. Kleinmaier,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. JON P. WILCOX, J. This case requires us to decide whether suppression is the proper remedy when a telephonic application for a search warrant is not recorded in accordance with Wis. Stat. § 968.12(3)(d)[1], and when the factual basis for the warrant is reconstructed in an ex parte hearing after the warrant has been executed. We conclude that suppression is improper, and that the warrant application in this case was appropriately and adequately reconstructed.

¶ 2. The State charged Cherise Raflik with seven felony drug counts, including possession of tetrahydrocannabinol (THC) with intent to deliver, drug tax stamp violations,[2] possession of psilocybin with intent to deliver, and keeping a drug house. Raflik moved to suppress all of the evidence seized from her home because the State had not made a contemporaneous record of the telephonic search warrant application in accordance with § 968.12(3)(d). After conducting a hearing, the Washington County Circuit Court, Leo F. Schlaefer, Circuit Court Judge, denied Raflik's motion. Raflik pleaded guilty to misdemeanor possession of THC, misdemeanor possession of psilocybin, and felony keep-

---

[1] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

[2] We note that the drug tax stamp laws, Wis. Stat. §§ 139.87–.96, were found unconstitutional by this court in *State v. Hall,* 207 Wis. 2d 54, 557 N.W.2d 778 (1997), an opinion issued over 18 months before the charges in this case were filed. However, because these charges were dismissed they are not at issue here.

602

ing a drug house. On appeal, Raflik challenged the denial of her motion to suppress, and the court of appeals certified the case to this court.

I

¶ 3. The relevant facts in this case are undisputed. On August 4, 1998, shortly after 6:00 p.m., Detective Douglas Kocher, of the Washington County Sheriff's Department, met Assistant District Attorney Todd Martens at the Germantown Police Station, where they were going to apply for a telephonic search warrant. Kocher sought to seize drugs and drug paraphernalia from the residence and garage of Cherise Raflik in the town of Jackson.

¶ 4. Kocher and Martens placed a call from the Germantown Police Department to Washington County Circuit Court Judge Annette Ziegler. Both Martens and Kocher thought the phone line they were using was a recorded line. Martens had brought along his own recording equipment, but was assured by local police that he did not need to use his equipment because the phone line was already being recorded. Thus, Martens did not hook up his independent recording device.

¶ 5. Judge Ziegler took testimony over the phone from Detective Kocher and found that there was probable cause to issue the search warrant. During the telephone conversation, Detective Kocher and Judge Ziegler each filled out a search warrant document with identical language that specified the location of the property and the items to be seized. The search warrant was executed that evening, and law enforcement officials seized drugs, drug paraphernalia, and cash from Raflik's house and garage.

¶ 6. The next morning, Martens contacted the Germantown Police Department to obtain the record-

ing of the search warrant application. The department informed Martens that there had been a mistake and that the call had been made on a non-recorded phone line. There was no evidence of improper behavior on the part of Martens, Kocher, or the Germantown Police.

¶ 7. At about 11:15 a.m. that same day, Martens notified Judge Ziegler of the mistake. Judge Ziegler directed Martens to locate Detective Kocher and to have Kocher review his notes so he would be prepared to give testimony about the previous evening's warrant application. Martens contacted Kocher, and Kocher prepared an affidavit, which recounted the warrant application of the night before. Kocher's affidavit was prepared at approximately 12:15 p.m. on August 5th.

¶ 8. At 1:23 p.m. that day, Judge Ziegler convened an ex parte hearing with Kocher and Martens present. Judge Ziegler explained on the record that they were "trying to, as contemporaneously as possible, provide a record of what exactly the testimony was that . . . supported the issuance of the search warrant." At the hearing, Detective Kocher testified that he had met Martens the night before at the Germantown Police Station, where they had called Judge Ziegler for a telephonic search warrant. Kocher testified that he thought the line they had used was recorded, and that he had found out that morning that the conversation, in fact, had not been recorded.

¶ 9. Kocher went on to testify to the contents of his warrant application from the previous evening. Kocher recounted the location and description of the home in question, the fact that Raflik lived there, and the details of the investigation that led to his requesting the warrant.

¶ 10. When Martens concluded his questioning, Judge Ziegler proceeded to ask Kocher several ques-

tions. First, Judge Ziegler asked Kocher about his conversations with Raflik's landlord, Steven Wydirek. Judge Ziegler also asked Kocher how he had made the inference that there might have been drugs in the house after seeing marijuana-like substances in the garage. Finally, the judge confirmed Wydirek's reliability. Each of the questions asked by Judge Ziegler was phrased in a leading format, that allowed Kocher to answer either "yes" or "correct."[3] After she finished

---

[3] Raflik takes particular issue with the portions of the reconstruction hearing where leading questions by Judge Ziegler provided the nexus between the house and the garage, and where they provided the reliability of the informant. *See infra* ¶¶ 44–48. This part of the hearing follows:

COURT: . . . I also recall certain testimony of yours where you said that the single car garage is next to, or on this property, or property the landlord has access to.

KOCHER: Correct. It's attached, or the building adjoins another building that the landlord reserves for his own personal use.

COURT: The garage?

KOCHER: Correct.

COURT: Okay, and you personally observed, through an open door, marijuana-like substances in the garage, right?

KOCHER: Correct. The main garage door was open.

. . .

COURT: . . . And based on your conversations with the landlord, Mr. Wydirek, did you find him to be someone that was reliable and would have information in this regard?

KOCHER: Yes, I did.

COURT: Okay. And so basically you had reason to believe what he was telling you, right?

KOCHER: That's correct.

questioning Kocher, Judge Ziegler found, from the facts presented and the inferences drawn from those facts, that there was probable cause to support the search warrant, and that they had adequately recreated the record of the warrant application. The affidavit Kocher had drafted that afternoon was also attached to the record.

¶ 11. Based on the evidence found when the search warrant was executed, Raflik was charged with possession of THC with intent to deliver, contrary to Wis. Stat. § 961.41(1m)(h)2; three drug tax stamp violations, contrary to Wis. Stat. §§ 139.87, 139.88 and 139.95; manufacture of THC, contrary to Wis. Stat. § 961.41(1)(h)2; possession of psilocybin with intent to deliver, contrary to Wis. Stat. § 961.41(1m)(g)1; and maintaining a drug house, contrary to Wis. Stat. § 961.42. Raflik filed a motion to suppress the evidence found pursuant to the warrant on the grounds that the State had failed to make a contemporaneous record of the warrant application, in violation of Wis. Stat. § 968.12(3), the Fourth Amendment of the U.S. Constitution, and Article I, Section 11 of the Wisconsin Constitution.

¶ 12. In a hearing on the suppression motion, Washington County Circuit Court Judge Leo Schlaefer ruled that the evidence seized pursuant to the search warrant should not be suppressed. The court noted that the State had exercised its best efforts to recreate the record within 24 hours of the original warrant application and that the record indicated that Detective

COURT: Okay. And so you think that along with the items you saw in the garage, there will likely be items in the residence.

KOCHER: That's also correct.

Kocher's testimony at the hearing was consistent with the testimony he had offered the previous evening. The trial court found that Raflik's substantial rights had not been prejudiced, and that, under the totality of the circumstances, the failure to record the warrant application was a technical irregularity under Wis. Stat. § 968.22. The court held that suppression was not a proper remedy and denied Raflik's motion.

¶ 13. Raflik pleaded guilty to the amended charges of misdemeanor possession of THC, misdemeanor possession of psilocybin, and felony keeping a drug house. On appeal, Raflik challenged her conviction on the grounds that the trial court erred when it had denied her motion to dismiss. The court of appeals, recognizing this as a case of first impression in Wisconsin, certified the appeal to this court.

II

¶ 14. Several constitutional rights are significant to this case: the right to be free from unreasonable search and seizure, protected by the Fourth Amendment to the U.S. Constitution and Article I, Section 11 of the Wisconsin Constitution; the due process right to meaningful judicial review, protected by the Fourteenth Amendment to the U.S. Constitution; and the right to a meaningful appeal, protected by Article I, Section 21 of the Wisconsin Constitution. The State concedes that Wis. Stat. § 968.12(3)(d) was violated when no contemporaneous recording of the warrant application was made. However, the State maintains that the failure to record the application only affects Raflik's right to have a meaningful record for the purposes of appeal, and that Raflik's right to a meaningful appeal was protected when the warrant application was reconstructed. Raflik, on the other hand, argues that the failure of the

State to meet the requirements of § 968.12 is not merely a technical irregularity, but instead renders the warrant constitutionally inadequate. Raflik concludes that such a significant violation warrants suppression.

¶ 15. The suppression of evidence is not a constitutional right, but rather it is a judge-made rule used to deter misconduct by law enforcement officials. *Stone v. Powell,* 428 U.S. 465, 482 (1976). Suppression is only required when evidence has been obtained in violation of a defendant's constitutional rights, *State v. Hochman,* 2 Wis. 2d 410, 419, 86 N.W.2d 446, 451 (1957), or if a statute specifically provides for the suppression remedy. *State ex rel. Arnold v. County Court,* 51 Wis. 2d 434, 439–440, 187 N.W.2d 354 (1971); *see also State ex rel. Peckham v. Krenke,* 229 Wis. 2d 778, 787, 601 N.W.2d 287 (Ct. App. 1999); *State v. Verkuylen,* 120 Wis. 2d 59, 61, 352 N.W.2d 668 (Ct. App. 1984). There is no specific statutory remedy provided for the failure to record a telephonic search warrant application. *See* Wis. Stat. § 968.12. Thus, the only question that remains is whether the failure to record the warrant application and the subsequent reconstruction of the application violated a constitutional right.

¶ 16. We are presented with three potential constitutional violations which could warrant suppression. First, as Raflik contends, the failure to record the warrant application may be a grievous enough error that the Fourth Amendment was violated in its own right. Second, if the record cannot be reconstructed, or if the record was not adequately reconstructed, there would be no probable cause on the record to support the warrant and the Fourth Amendment's probable cause requirement would arguably not be met. Finally, if the record was not adequately reconstructed, Raflik's Four-

teenth Amendment due process right to meaningful judicial review and her right to a meaningful appeal under Article I, Section 21 of the Wisconsin Constitution may have been violated. We now address each of these concerns.

¶ 17. We conclude that the Fourth Amendment was not directly violated in this case. The Fourth Amendment to the U.S. Constitution states:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Here, Detective Kocher met all of the requirements of the Fourth Amendment during his warrant application. The parties agree that probable cause existed to issue the warrant, that a neutral and detached magistrate issued the warrant, and that the warrant described with specificity the places to be searched and the items to be seized. Nothing in the Fourth Amendment requires a contemporaneous recording of the application.

¶ 18. Raflik points to a number of decisions in support of her position that the mere failure to record the warrant application is of a constitutional magnitude. In *State v. Myers,* 815 P.2d 761 (Wash. 1991), the Washington Supreme Court addressed a telephonic warrant that was, by accident, never recorded as required under that state's rule. *See* Wash. Super. Ct. Crim. R. 2.3(c) (2001). The day after the warrant had been executed (which was also the day after the warrant application had been made), the officer learned that the application had not been recorded and wrote down what he recalled from the day prior. Over three

months later, at the suppression hearing, the defendant challenged the adequacy of the warrant application. At the hearing, the issuing judge testified that he did not have an independent recollection of the events surrounding the issuance of the warrant.

¶ 19. The Washington State Supreme Court determined that the failure to record the warrant application was a "gross deviation" from the rule. *Myers,* 815 P.2d at 768. The court went on to state that reconstruction of the application might have been acceptable if it did not "impair the reviewing court's ability to ascertain what the magistrate considered when he issued the warrant." *Id.* The court noted that the only evidence of the telephonic affidavit was the police officer's testimony, offered four months after the original application, and the officer's report made after the warrant was executed, and after it was discovered that there was no recording. The court held that, under the circumstances, the reconstruction made it "impossible to accurately review what the judge considered" when he issued the warrant. *Id.*

¶ 20. Raflik emphasizes the policies cited by the *Myers* court that support strict adherence to statutory rules regarding recording telephonic warrants: facilitating judicial review, compelling respect for and observance of the constitutional guarantees of the Fourth Amendment, preserving judicial integrity, and removing any hint of misconduct or bad faith by the prosecutor or the police. *Id.* at 767.

▬

¶ 21. We recognize the importance of these policies, but we find that they are not necessarily compromised by allowing a warrant application to be reconstructed. Judicial integrity, the right to judicial review, and the observance of Fourth Amendment guarantees

can be adequately protected when a careful reconstruction of a warrant application is made. We also recognize the defendant's concerns about police misconduct and the possibility of police acting in bad faith. In cases where the failure to record a warrant application is the result of misconduct by police, reconstruction may not be an adequate option, and suppression may be appropriate. However, there was no evidence of police misconduct in this case, so we do not reach the question here.

¶ 22. Raflik also directs our attention to *City of Minneapolis v. Cook,* 498 N.W.2d 17 (Minn. 1993), along with a number of federal cases that have examined situations where all or part of a warrant application was not recorded. Like *Myers* and the present case, *Cook* involved a telephonic warrant application that was not recorded in conformance with a statute. In *Cook,* the Minnesota Supreme Court criticized the failure to record the warrant application, particularly because there were no contemporaneous notes relied upon by the officer in applying for the warrant, and no notes taken by the officer as he made his application. *Id.* at 22. Because there was no "substantially contemporaneous record . . . made" the court suppressed the evidence that arose from the warrant. *Id.*

¶ 23. Likewise, in *United States v. Hittle,* 575 F.2d 799 (10th Cir. 1978), the court found a search warrant inadequate when there was no oral testimony and an inadequate affidavit. The court held that the probable cause requirement of the Fourth Amendment would be "significantly weakened if a court can rely on the recollection of those concerned to support a probable cause finding long after the search warrant has been issued." *Id.* at 802.

¶ 24. Still, Raflik admits that most federal courts have not seen fit to suppress evidence because of a failure to record some or all of the warrant application. *See, e.g., United States v. Richardson,* 943 F.2d 547 (5th Cir. 1991) (finding suppression inappropriate when the magistrate and prosecutor were unaware that the recording equipment did not work, and where no record was made); *United States v. Rome,* 809 F.2d 665 (10th Cir. 1987) (refusing to suppress evidence when the preliminary discussions between the magistrate and the agent were not recorded); *United States v. Loyd,* 721 F.2d 331 (11th Cir. 1983) (per curiam) (holding that suppression is not necessary when the magistrate failed to certify the accuracy of the recorded transcript); *United States v. Stefanson,* 648 F.2d 1231 (9th Cir. 1981) (declining to suppress evidence when the oath was not recorded); *United States v. Johnson,* 641 F.2d 652 (9th Cir. 1980) (refusing to suppress evidence when the oath was not administered until after the oral affidavit).

¶ 25. Raflik differentiates these cases from her own in several ways. First, Raflik notes that in her case, the police bore the responsibility for recording the conversation, as opposed to the magistrate, who is responsible for recording a telephonic warrant application in a federal case. *See* Fed. R. Crim. P. 41(2)(D) (2000). Second, Raflik's case featured no contemporaneous recording at all, as opposed to the majority of the federal cases where only part of the warrant application was unrecorded. Third, the time between the application and reconstruction, 18 hours in this case, was less than that in most cases—a fact which, Raflik concedes, benefits the State's position. Finally, Raflik suggests that the judge lost at least some appearance of neutrality when she asked Kocher leading questions at the reconstruction hearing.

¶ 26. We do not deny the importance of each of these factors, but none of them directly affects Raflik's Fourth Amendment right to be free from an unreasonable search or seizure, and none of them warrants suppression in its own right. Each of the factors Raflik identifies, however, may be relevant to the question of whether an adequate reconstruction of the record can be made consistent with Raflik's right to a meaningful appeal, and her due process right to meaningful judicial review of the warrant process. In particular, the length of the unrecorded segment and the time between the application and reconstruction can be taken into consideration by the trial court when determining the adequacy of the reconstruction. *See infra* ¶¶ 41–43. With regard to the possibility of the issuing judge becoming a prosecution witness, we recognize that it is not an ideal situation. In the reconstruction of a warrant application, however, we find that a limited amount of judicial involvement is appropriate as long as the judge's participation is not excessive and the participation does not compromise the judge's neutral and detached role. *See infra* ¶¶ 44–48.

¶ 27. Raflik also asks us to consider *Glodowski v. State,* 196 Wis. 265, 220 N.W. 227 (1928). *Glodowski* is a Prohibition-era case where the sheriff of Portage County applied for a warrant to seize illicit liquor from the defendant. No record was made of the probable cause offered by the sheriff before the warrant was issued. This court held that suppression of the evidence found pursuant to the warrant was appropriate based on the fact that no record had been kept. The court emphasized that a record must be made "at or before the time that the judicial act was performed." *Id.* at 271. Raflik argues that the core of the *Glodowski* holding is

that the failure to contemporaneously record a warrant application weakens the Fourth Amendment's probable cause requirement. We disagree.

■

¶ 28. In *Glodowski,* this court stated that "[t]he essential thing is that proof be reduced to permanent form and made a part of the record, which may be transmitted to the reviewing court." *Id.* at 272. The record of the warrant application "may consist of the sworn complaint, of affidavits, or the sworn testimony taken in shorthand . . . or of testimony reduced to longhand . . . or of a combination of all these forms of proof." *Id.* We find that the focus of *Glodowski* was primarily on the ability of a reviewing court to assess the record, and not on the sufficiency of the warrant itself. After discussing the probable cause requirement, the *Glodowski* court stated, "there must be a record upon which the reviewing court may determine whether there was proof of any facts before the magistrate which would support the finding of probable cause." *Id.* at 271. We find that the concerns raised in *Glodowski* can be adequately protected by the careful reconstruction of a warrant application, as outlined below.

¶ 29. Finally, we note that several courts have invoked the "good faith exception"[4] of *United States v. Leon,* 468 U.S. 897 (1984), under circumstances similar to those here. *See, e.g., United States v. Chaar,* 137 F.3d 359, 363–64 (6th Cir. 1998); *United States v. Richardson,* 943 F.2d 547, 549–51 (5th Cir. 1991). However, since we find that the reconstruction in this case was

[4] This court adopted a version of the good faith exception last term in *State v. Eason,* 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625.

sufficient to protect Raflik's constitutional rights, we do not address the good faith exception here.

### III

¶ 30. Although we find that Raflik's Fourth Amendment rights were not directly violated by the accidental failure to record the warrant application, the failure to record the application does affect Raflik's right to meaningful judicial review of the warrant process, and her right to a meaningful appeal. The right to appeal is absolute under the Wisconsin Constitution: "Writs of error shall never be prohibited, and shall be issued by such courts as the legislature designates by law." Wis. Const. art. I, § 21(1). We have interpreted the right to appeal to require that the appeal be meaningful. *State v. Perry,* 136 Wis. 2d 92, 99, 401 N.W.2d 748 (1987).

¶ 31. Stemming from the right to a meaningful appeal is a criminal defendant's right to a full transcript of the proceedings. *Id.* Providing a defendant with a full transcript guarantees that the defendant has the opportunity to analyze the proceedings of the trial court and to challenge any errors. In some cases, however, a functionally-equivalent substitute of the transcript may be provided if the substitute accurately portrays what happened during the course of the trial. *Id.*

¶ 32. Wisconsin Stat. § (Rule) 809.15(3) provides, in relevant part, that "[a] party who believes the record, including the transcript of the reporter's notes, is defective or does not accurately reflect what occurred in the trial court may move the court in which the record

is located to correct the record." This court has recognized that reconstruction is an acceptable method for correcting a missing portion of a trial record. *Perry,* 136 Wis. 2d at 100–01. Whether such a reconstruction is adequate is a question that is reviewed by the court ab initio. *Id.* at 97. The determination is one that is ultimately within the procedural supervisory jurisdiction of this court. *Id.*

¶ 33. The court of appeals first addressed the adequacy of a record reconstruction in *State v. DeLeon,* 127 Wis. 2d 74, 377 N.W.2d 635 (Ct. App. 1985). In *DeLeon,* the court reporter had lost some of her notes, comprising about fifteen minutes of trial testimony. The trial court attempted to reconstruct the missing portion by having the witnesses recalled. DeLeon then challenged the new record, claiming that it had not been properly reconstructed.

¶ 34. The court of appeals noted that Wis. Stat. § (Rule) 809.15(3) allowed correction of a trial record, but that it did not set out any guidelines by which an adequate reconstruction could be made. *De-Leon,* 127 Wis. 2d at 77–78. The court therefore laid out a procedure by which parties could reconstruct a missing portion of a trial record.

¶ 35. As the court of appeals explained, the trial court must first make a facial inquiry as to whether the missing portion of the record can be reconstructed, weighing such variables as the length of the missing transcript, the availability of witnesses, and the amount of time elapsed between the trial and the reconstruction. *Id.* at 81. A trial court may find that a portion of a trial record cannot be reconstructed as a matter of law, in which case a new trial should be ordered. *Id.*

¶ 36. If the trial court finds that reconstruction is possible, the parties should first attempt to prepare an

agreed statement of the record on appeal, either by stipulation, or by an amendment-counteramendment process similar to the one laid out in Federal Rule of Appellate Procedure 10(c). *Id.* at 80–81. If any disputes remain, those disputes will be settled by the trial court. If the reconstruction reaches this stage, the trial court may rely on its own recollection and notes or materials from the parties as an aid to reconstruction. The trial court is also allowed to conduct hearings or consult with counsel. *Id.* at 81–82. Every step of this procedure is reviewable on appeal, and appellate courts should review errors in the reconstruction itself under the "clearly erroneous" standard. *Id.* at 82.

¶ 37. This court expanded on *DeLeon* in *State v. Perry,* 136 Wis. 2d 92. *Perry* involved a criminal defendant who sought to reconstruct a portion of his trial record. Before a transcript of the trial was made, the notes of the trial were lost in the mail, en route from the primary court reporter to a substitute court reporter. When the postal service finally located the notes, they were in poor condition and were incomplete. Many of the notes could be pieced together, but large portions of the transcript were still missing, including significant portions of the final two days of the eight-day jury trial. The trial court reviewed what was left of the record and found that, although it was not perfect, the record was at least " 'sufficient . . . to provide the appellate court with a basis of reviewing the entire record . . .' " *Id.* at 97.

¶ 38. On review, this court determined that the trial record was insufficient as a matter of law. *Id.* at 108. The court noted that the proper procedure for reconstruction had been articulated in *DeLeon,* and thereby adopted the methodology used by the *DeLeon* court. This court went on to determine that the recon-

struction of a record can protect a defendant's right to meaningful review when it meets certain criteria. Expanding on the factors in *DeLeon*, this court held that when assessing the adequacy of a reconstruction, a court should consider "the nature of the case, the nature of the claim of error, the passage of time from the date a transcript originally was, or should have been, prepared, and whether the trial was to the court or to a jury." *Id.* at 98. Because the trial court did not take these factors into account at all, the *Perry* court deemed the reconstruction inadequate. *Id.* at 108.

¶ 39.. We hold that the reconstruction procedures articulated in *Perry* and *DeLeon* may be used in a situation where a telephonic warrant application has mistakenly not been recorded. Where there is no evidence of intentional or reckless misconduct on the part of law enforcement officers, a reconstructed warrant application may serve as a functional equivalent of the record of the original application. Such a reconstruction, when made appropriately, can protect the defendant's right to a meaningful appeal, as well as the defendant's ability to challenge the admission of evidence in a suppression hearing.

¶ 40. The *Perry* court pointed out that when challenging the sufficiency of a record, the appellant has the burden to demonstrate that there is a "colorable need" for the missing portion of the record. *Id.* at 108. The appellant is not required to show prejudice, but the error cannot be so trivial that it is clearly harmless. *Id.* Given the pronouncement of the legislature in § 968.12 and the importance of the Fourth Amendment rights at stake in the issuance of a search warrant, we think that most, if not all, situations where a warrant application

is inadvertently not recorded will require reconstruction if the defendant's due process right and right to a meaningful appeal are to be protected. Without an appropriate reconstruction, there would be no probable cause on the record to support the warrant, which would arguably be grounds for suppression.

¶ 41. When reconstructing a warrant application, many of the same factors announced by the *Perry* and *DeLeon* courts should be taken into consideration, particularly the length of time between the application and the reconstruction, and the length of the reconstructed segment in relation to the entire warrant request. In addition to these factors, a trial court should also consider if there were any contemporaneous or nearly contemporaneous written documents, such as notes, that were used to reconstruct the record, the availability of witnesses used to reconstruct the record, and the complexity of the segment reconstructed.

¶ 42. In the present case, we find enough evidence in the record to demonstrate that Raflik's due process right and her right to a meaningful appeal have been protected. The length of the reconstructed section was relatively short and only one witness, Detective Kocher, was required to testify. Even though the entire application was unrecorded, the facts that provided probable cause were uncomplicated and easily remembered by Kocher. Many of the facts could be corroborated both by Kocher's affidavit and by the warrant documents filled in separately but simultaneously by Detective Kocher and Judge Ziegler during the original telephonic application.

¶ 43. Perhaps most importantly, the application was reconstructed only 18 hours after the actual appli-

cation, when the events of the previous night were still fresh in the minds of all of the participants. Immediately after Assistant District Attorney Martens discovered that no recording had been made, he contacted the magistrate and Detective Kocher, and they prepared notes about the telephonic application the night before. This is in sharp contrast to a case like *Myers,* where almost four months had elapsed between the application and the reconstruction. *See Myers,* 815 P.2d at 768. Finally, all of the participants in the original warrant application were available to the trial court when it reconstructed the record.

¶ 44. Raflik expresses concern over Judge Ziegler's participation in the reconstruction hearing, and particularly over the fact that the judge asked Detective Kocher a series of leading questions. Raflik argues that allowing a judge to question a witness is inappropriate, particularly when it is done in a leading manner, because the judge will be inclined to ask questions that tend to support the judge's decision to issue the warrant. Raflik also suggests that the prospect of judges testifying is unseemly because it puts a judge into the role of prosecution witness and raises the specter that the judge might not act in a neutral and detached manner.

¶ 45. We do not find Judge Ziegler's actions inappropriate in this case. Although we do not necessarily encourage active judicial participation in the reconstruction of a warrant application, a limited amount of participation is appropriate as long as the judge's participation is relevant to the proceeding, is not excessive, and does not compromise the judge's neutral and detached role. As this court noted in *Perry,* a judge is allowed to resolve disputes during the reconstruction of

a trial record based on the judge's "recollection, trial notes, consultation with counsel, affidavits, or recall of witnesses." *Perry,* 136 Wis. 2d at 102. We see no reason to deviate from that pronouncement for the reconstruction of a warrant application.

¶ 46. Several factors may even make a judge's participation more appropriate during the reconstruction of a warrant application than it might be during the reconstruction of a trial segment. A judge's recollections may, as in this case, corroborate the fact that the judge had been told certain information during the original application. This is particularly helpful given the ex parte nature of the warrant application process, and the limited number of participants in the application process. In *Myers,* the Washington Supreme Court actually required a neutral person, such as the magistrate or court clerk, to testify whenever reconstruction is attempted because the judge or clerk has no stake in the outcome. *Myers,* 815 P.2d at 768.

¶ 47. As an alternative to preventing the judge from testifying, Raflik asks us at least to establish a rule that would prevent a judge from asking leading questions during a reconstruction hearing. We decline to do so. The nature of the warrant application process sometimes requires a magistrate to clarify or question the law enforcement officer's basis for probable cause. In such a case, a leading question from the magistrate may be appropriate. We see no reason to prevent this practice, which is perfectly acceptable during the actual warrant application, from carrying over to a reconstruction hearing, as long as the judge's participation is not excessive and the judge's neutral and detached role is not compromised.

¶ 48. Here, we find that Judge Ziegler's participation did not cross the line. The questions asked by Judge Ziegler went no further than to clarify several points addressed by Detective Kocher and helped confirm that Kocher had, in fact, testified to the judge the previous evening about the nexus between the house and the garage, and about the reliability of the informants. The judge's questions did not amount to excessive testimony, and did not compromise the integrity of the proceeding.

¶ 49. We also reject Raflik's request to make the reconstruction of a warrant application an adversarial hearing. In a situation like *Perry,* where a portion of the trial record is reconstructed, the participation of both parties is appropriate, and even required out of fairness, because the proceedings being reconstructed were originally adversarial. *Perry,* 136 Wis. 2d at 102. If a portion of a criminal trial is being reconstructed, the defendant may also have a Sixth Amendment right to counsel. *Id.* However, the same concerns do not exist for a warrant application.

¶ 50. The Sixth Amendment right to counsel generally attaches when either a criminal complaint or a warrant for arrest is filed. *Kirby v. Illinois,* 406 U.S. 682, 688–89 (1972); *State v. Harris,* 199 Wis. 2d 227, 235 n.3, 544 N.W.2d 545 (1996). At the time a search warrant is issued, there is technically no defendant, and the suspect does not have a right to counsel. This should be apparent from the fact that the telephonic warrant application itself is ex parte. When applying for a search warrant, the only participants need to be the law enforcement officials applying for the search warrant

and a neutral magistrate. As long as reconstruction of the application is done before the suspect is charged, there is no constitutional requirement that the hearing be adversarial, and we decline to impose such a requirement.

¶ 51. Although we do not reach the question here, we note that if the reconstruction of a warrant application were to take place after the suspect is charged, the defendant may have the right to have counsel present at the reconstruction hearing. We also note that, even though a warrant application may be reconstructed in an ex parte hearing, the defendant retains the protection of an adversarial proceeding when challenging the adequacy of the reconstruction at a motion for suppression and on appeal. *Douglas v. California* , 372 U.S. 353, 356–58 (1963); *Powell v. Alabama,* 287 U.S. 45, 57 (1932).

¶ 52. In adopting this procedure for the reconstruction of a telephonic search warrant application, we sound a note of caution. The preferred method for making a record of a telephonic warrant application, as articulated by the legislature in Wis. Stat. § 968.12(3)(d), is through contemporaneous recording, not reconstruction. Where police intentionally or recklessly disregard the statute, or where the failure to record the application significantly prejudices the defendant, reconstruction might not be sufficient to protect the defendant's rights.

IV

¶ 53. As a final matter, we address the burden of proof for reconstruction. The State argues that when a warrant application is reconstructed, the trial court

must find, by a preponderance of the evidence, that the reconstruction adequately replaces the missing portion of the record. In the State's view, because the controlling burden of proof at a suppression hearing should be no greater than a proof by the preponderance of the evidence, *see United States v. Matlock,* 415 U.S. 164, 177 n.14 (1974), the reconstruction of the application, which is likewise challenged at a suppression hearing, will only carry a burden of proof of a preponderance of the evidence. Raflik contends that because the reconstruction of a warrant application is a portion of a larger criminal proceeding, the proper burden of proof is beyond a reasonable doubt. We find the State's view persuasive.

¶ 54. The *DeLeon* and *Perry* courts both held that in a reconstruction hearing, the judge must be satisfied that the reconstructed record accurately reflects what actually happened to the same level required in the proceeding itself. *Perry,* 136 Wis. 2d at 99; *DeLeon,* 127 Wis. 2d at 82. That is, to reconstruct a portion of a criminal trial, the trial judge must find that the record has been adequately reconstructed beyond a reasonable doubt. *Perry,* 136 Wis. 2d at 99. Likewise, to reconstruct a portion of a civil trial, the court must be satisfied that the record has been reconstructed to the level appropriate for that trial. *DeLeon,* 127 Wis. 2d at 82.

¶ 55. The proceeding in question here is a warrant application. Because a warrant application is not a fact that constitutes an element of the charged crime, there is no requirement that the contents of a warrant application be proved beyond a reasonable doubt. *See Lego v. Twomey,* 404 U.S. 477, 486–87 (1972); *In re Winship,* 397 U.S. 358, 364 (1970). Additionally, the admissibility of evidence may be determined by a less stringent standard without affecting the reliability or

constitutionality of a verdict. *Lego,* 404 U.S. at 487. This court has held that a preponderance of the evidence standard is generally appropriate in a suppression hearing. *See, e.g., State v. Armstrong,* 223 Wis. 2d 331, 345, 588 N.W.2d 606 (1999) ("[T]he State must establish by a preponderance of the evidence whether a custodial interrogation took place."); *State v. Santiago,* 206 Wis. 2d 3, 12, 556 N.W.2d 687 (1996) ("[T]he State must prove the sufficiency of the *Miranda* warnings and the knowing and intelligent waiver of *Miranda* rights by a preponderance of the evidence.").

¶ 56. Following the holdings of *DeLeon* and *Perry,* the trial court must find that a reconstruction is accurate to the same level of proof as the proceeding that is being reconstructed. Because a motion for suppression of evidence would be judged by a preponderance of the evidence standard, we hold that the reconstruction of a warrant application should be judged by that standard as well.

¶ 57. Applying this standard, we find that the trial court had ample evidence to conclude that the State met its burden of proof in reconstructing the warrant application, and in doing so, protected Raflik's right to a meaningful appeal and her due process right to meaningful judicial review. Because we find that the record was properly reconstructed, and because the parties agree that there was sufficient probable cause to support the warrant, the evidence seized pursuant to the warrant should not be suppressed, and Raflik's convictions must be upheld.

*By the Court.*—The order of the circuit court is affirmed.

¶ 58. ANN WALSH BRADLEY, J. (*dissenting*). While I agree with the majority that there may be instances when a warrant application proceeding can be reconstructed, I cannot agree with the reconstruction procedure the majority has adopted. The majority's approach fails to protect adequately a defendant's right to meaningful review and undermines the warrant judge's role as a neutral and detached decision maker.

¶ 59. In analogizing to *State v. Perry,* 136 Wis. 2d 92, 401 N.W.2d 748 (1987), and *State v. DeLeon,* 127 Wis. 2d 74, 377 N.W.2d 635 (Ct. App. 1985), the majority sidesteps the import of the significant differences between the facts in those cases and the facts at hand. Reconstruction of an ex parte proceeding requires additional safeguards if review is to remain meaningful and if the warrant judge is to remain neutral and detached.

¶ 60. Even the State acknowledges that it would be better to have additional safeguards that the majority has now rejected. I would require procedures different from the majority's that would serve as the additional safeguards necessary in the reconstruction of an ex parte proceeding. Because those safeguards were not present here, I conclude that Raflik's right to meaningful review was violated and that the evidence against her should have been suppressed. Accordingly, I respectfully dissent.

I

¶ 61. I begin by highlighting the principal reasons that the majority's application of *Perry* and *DeLeon* gives me pause. First, both *Perry* and *DeLeon* arose in contexts where only a portion of a full transcript was missing. In *DeLeon,* 127 Wis. 2d at 76, approximately 15 minutes of testimony was unavailable from the tran-

626

script of a first-degree sexual assault trial. The court of appeals agreed with the circuit court that the testimony could be reconstructed adequately. *See id.* at 83. In *Perry,* 136 Wis. 2d at 96, 107, "significant portions" of the transcript for two of eight days of a trial were missing. We agreed with the court of appeals in *Perry* that the missing portions could not be adequately reconstructed, and we concluded "as a matter of law that the transcript is insufficient." *Id.* at 104, 108–109.

¶ 62. As the majority recognizes in form if not in substance, one of the factors for circuit courts to consider in determining whether reconstruction is appropriate is "the length of the missing portion in relation to the entire transcript." *Perry,* 136 Wis. 2d at 101. Here, it is the full transcript of a proceeding that is unavailable, yet the majority has concluded that it may be reconstructed.

¶ 63. Second, *Perry* and *DeLeon* involved the reconstruction of adversarial proceedings. In *DeLeon,* the court of appeals explained that the reconstruction procedure would also be adversarial:

> [T]he parties should first attempt to prepare an agreed statement of the record on appeal, either by stipulation or by the amendment and counteramendment procedure outlined in Fed. R. App. P. 10(c). Then, if any dispute remains as to what occurred, the difference shall be submitted to and settled by the trial court.

127 Wis. 2d at 79. This court in *Perry* approved of this methodology. 136 Wis. 2d at 102. The procedure contemplated by both *Perry* and *DeLeon* is an adversarial reconstruction of an adversarial proceeding. In contrast, here both the proceeding to be reconstructed as well as the reconstruction procedure adopted by the majority are ex parte.

¶ 64. Thus, Raflik's case presents a situation significantly different from those in *Perry* and *DeLeon*. Given the standards the majority has adopted, I am not convinced that an ex parte proceeding reconstructing an ex parte proceeding will sufficiently protect a defendant's right to meaningful review. In *DeLeon*, 127 Wis. 2d at 82, the court of appeals recognized that reconstruction is "not a normal fact-finding process but is actually a process for refreshing recollection." Therefore, the court concluded, procedural safeguards are necessary to protect an appellant's right to meaningful review. *Id.* In *Perry* and *DeLeon*, one of those safeguards was the defense's ability to challenge, as a first-hand witness of the trial, the State's recollection of the trial events. Here, the parties do not stand on such a level playing field, and the majority has failed to build in additional safeguards to restore the equilibrium.

¶ 65. My hesitation at the majority's decision is compounded by a close examination of this court's opinion in *Glodowski v. State*, 196 Wis. 265, 220 N.W. 227 (1928). The *Glodowski* court rested its decision, at least in part, on principles of meaningful review. *Id.* at 271. Additionally, *Glodowski* is more instructive than either *Perry* or *DeLeon* because it involved the impermissible supplementation of a warrant application.

¶ 66. In *Glodowski*, a sheriff testified before a magistrate in order to establish probable cause for a warrant. 196 Wis. at 266. After the execution of the warrant, the magistrate testified at a suppression hearing as to "further statements made by the sheriff under oath before the warrant was issued," apparently to bolster the finding of probable cause. *Id.* The court admitted the· evidence, and the defendant was convicted. *Id.* This court reversed, explaining that a war-

rant judge is prohibited from contributing to the record after the probable cause determination has been made:

> Judicial action must be reviewed upon the record made at or before the time that the judicial act was performed. The validity of judicial action cannot be made to depend upon the facts recalled by fallible human memory at a time somewhat removed from that when the judicial determination was made. . . .
>
> Mature deliberation satisfies the court that *State v. Blumenstein,* 186 Wis. 428, 202 N.W. 684, and *Hiller v. State,* 190 Wis. 369, 208 N.W. 260, must be overruled in so far as these cases hold that the reviewing court may supplement the record made by the magistrate by taking oral testimony to disclose the proof that was in fact offered before the warrant was issued.

*Id.* at 271–72. We concluded:

> Upon hearing the motion to suppress, the court should not have considered the proof of additional testimony given by the sheriff before the warrant issued or the proof offered by the defendant, but should have considered only the record made before the search warrant was issued.

*Id.* at 272.

¶ 67. The majority fails to acknowledge this language because the majority cannot reconcile *Glodowski* with its analysis. When asked at oral argument whether a decision adopting its position would require this court to overrule any cases, the State answered: "I think *Glodowski* presents the problem for the State." That is because *Glodowski* forbids a warrant judge from supplementing the record after the warrant was executed, which is precisely what has occurred in this case.

## II

¶ 68. This *Glodowski* prohibition leads into yet another concern I have with the majority's methodology. The majority condones a warrant judge's active participation in reconstruction, thereby undermining the neutrality of the judge. Although the majority begins its discussion of active judicial participation by saying it does not encourage it, the majority then backtracks by explaining that some judicial participation is acceptable as long as it is not "excessive." Majority op. at ¶ 45. The majority adds that a judge's participation is "more appropriate during the reconstruction of a warrant application than it might be during the reconstruction of a trial segment." Majority op. at ¶ 46.

¶ 69. The majority asserts that the judge's testimony is "particularly helpful given the ex parte nature of the warrant application process, and the limited number of participants in the application process." Majority op. at ¶ 46. I, however, conclude that it is exactly these qualities of the warrant application process—the ex parte nature of the proceeding and the presence of witnesses for only one side—that demand the strictest caution in reconstructing a warrant application. I am bothered by the specter of a warrant-issuing judge as the State's star witness at a reconstruction proceeding. As a general rule it will prove difficult for a judge's role as an active participant in a reconstruction hearing to coexist with that judge's role as a neutral and detached decision maker. Asking judges to fill both roles places them in an awkward and unseemly position.

¶ 70. Some of the judge's questions at the reconstruction hearing in this case raise the *Glodowski* problem because they provide crucial information that

was not a part of Detective Kocher's affidavit: information supporting the reliability of the informant and information providing a nexus between the location of the search and the location set forth in the affidavit. The search warrant included authorization to search Raflik's house, although Kocher's affidavit stated that he had seen marijuana plants only in an unattached garage and "in an orchard behind the residence." Kocher's affidavit did not provide any particular facts establishing a nexus between Raflik's house and the drug evidence found in the yard and unattached garage. Instead, it was the judge's leading questions that solidified a link between the house and the garage and verified the reliability of Kocher's informant. Yet, the majority concludes that these questions "did not amount to excessive testimony" without telling us what would be excessive. Majority op. at ¶ 48.

### III

¶ 71. I would require procedures different from the majority's that would better protect the defendant's right to meaningful review and do less damage to the judge's role as a neutral and detached decision maker. The police investigators, the district attorney, and the judge involved in the warrant application should independently prepare affidavits detailing their recollections of the information in support of probable cause. Because police investigators who applied for the warrant may also have executed it, they should specifically aver whether the information supplied in their affidavits was known to them at the time of the warrant application. As the State acknowledges, this sort of independent reconstruction has support in case law and

is preferable to the procedure approved by the majority. *See State v. Smith,* 941 P.2d 691, 694 (Wash. Ct. App. 1997.)

¶ 72. As the State also advances, if reconstruction is done independently, then the defendant has a meaningful opportunity to challenge the reconstruction at a suppression hearing. At that hearing, a judge other than the judge who issued the warrant would preside. This procedure would better maintain each judge's neutral role, and it is yet another safeguard recommended by the State that the majority does not require.

¶ 73. Finally, I note that although the majority correctly acknowledges that under *Perry* and *DeLeon,* a circuit court is to determine that reconstruction is accurate to the "same level of proof as *the proceeding that is being reconstructed,*" the majority nevertheless concludes that the burden the State must meet is a preponderance of the evidence because that is "generally appropriate in a *suppression hearing.*" Majority op. at ¶¶ 55–56 (emphasis added). The proceeding to be reconstructed in this case, however, is a *warrant application* where the State must establish probable cause. *See State v. Higginbotham,* 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991).

¶ 74. What does the majority mean when it says it agrees with the State that "the trial court must find, by a preponderance of the evidence, that the reconstruction adequately replaces the missing portion of the record"? Majority op. at ¶ 53. How does this burden relate to the requirement that the State show probable cause for a warrant or prove facts beyond a reasonable doubt in a criminal case?

¶ 75. The majority's statement of the burden of proof is deceptively simple. It gives little indication as to how the standard applies when it concludes without

632

explanation that "the trial court had ample evidence to conclude that the State met its burden of proof in reconstructing the warrant application, and in doing so, protected Raflik's right to a meaningful appeal." Majority op. at ¶ 57.

¶ 76. In sum, I do not agree with the majority that Raflik's right to meaningful review was adequately protected by the reconstruction procedures employed. Additional safeguards are necessary when a court attempts by an ex parte proceeding to reconstruct in its entirety another ex parte proceeding. The procedures approved by the majority both compromise a defendant's right to meaningful review and undermine the warrant judge's role as a neutral decision maker. Thus, I would reverse the decision of the court of appeals.

¶ 77. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.