COURT OF APPEALS
DECISION
DATED AND FILED

July 20, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP161-CR**

Cir. Ct. No. **2016CF104**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

TERRY M. PETERSON, JR.,

  DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Vernon County: DACRY JO ROOD, Judge. *Affirmed*.

Before Blanchard, P.J., Kloppenburg, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Terry M. Peterson, Jr. appeals a judgment convicting him of operating a motor vehicle while intoxicated (OWI) as a fifth offense. Peterson argues that the circuit court erred in denying his motion to suppress evidence on the ground that the procedure used to obtain a telephonic search warrant for a blood draw following his arrest for OWI and his refusal to submit to chemical testing of his blood did not comport with the requirements of WIS. STAT. § 968.12(3) (2021-22).[1] Specifically, Peterson asserts that the State's reconstruction of unrecorded portions of the telephonic warrant application was inadequate and violated his constitutional rights. We conclude that the search warrant was valid and that the State adequately reconstructed the record to reflect the issuing judge's considerations at the time of the warrant application, with the result that he fails to show a violation of his constitutional rights. Accordingly, we affirm.

## BACKGROUND

¶2 The facts pertinent to this appeal are undisputed. In September 2016, Officer Josiah Gjefle of the Viroqua Police Department initiated a traffic stop after seeing a vehicle weaving several times and discovering that the driver's license of the vehicle's registered owner was revoked. Gjefle noticed an odor of intoxicants coming from the vehicle's driver, Peterson, when speaking with him pursuant to the stop. Gjefle also observed that Peterson's eyes were bloodshot and glassy and his speech was slurred. Peterson admitted that he had been drinking alcohol earlier that night.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version.

¶3 Peterson performed inadequately on field sobriety tests and provided a preliminary breath test sample with a .165 result. Gjefle arrested Peterson for OWI and took him to the hospital for a blood draw. After Gjefle read him the Informing the Accused form, Peterson refused to consent to chemical testing. Gjefle then completed a search warrant affidavit to obtain a sample of Peterson's blood, and Gjefle contacted Vernon County Circuit Court Judge Michael J. Rosborough by telephone to complete the warrant application procedure.

¶4 Although the telephonic search warrant application should have been recorded, Gjefle's conversation with Judge Rosborough related to the warrant application was not recorded. However, Gjefle's body camera was activated throughout and recorded his side of the conversation in its entirety. Judge Rosborough issued the warrant, Peterson's blood was drawn, and the test results indicated that Peterson's blood alcohol concentration was significantly above the legal limit.

¶5 The State charged Peterson with several driving offenses, including OWI with a minor in the vehicle as a fifth offense. Peterson filed a motion to suppress, which raised several arguments related to the propriety of the arrest and search warrant application process. The State filed a written response to Peterson's motion, accompanied by a transcript of the attempt by Gjefle and Judge Rosborough to reconstruct the conversation they had regarding the search warrant application. The warrant application had occurred more than two years before Gjefle and Judge Rosborough attempted to reconstruct the record and, during the reconstruction, Gjefle and Judge Rosborough both acknowledged that they had no independent recollection of the search warrant application. However, they attempted to reconstruct the record to reflect the conversation that they would have had regarding Peterson's refusal based on their standard procedures. Gjefle also reviewed his

3

police report following Peterson's arrest and a transcript of his body camera recording in preparation for the reconstruction.

¶6 After conducting an evidentiary hearing, the circuit court found the body camera footage of Gjefle's side of the conversation "very compelling." The court further observed that Gjefle had been placed under oath at the beginning of the conversation, and that it could clearly recognize Judge Rosborough's "voice on two occasions" during the course of the conversation. The court put weight on the facts that Judge Rosborough had granted search warrants in his capacity as judge for over thirty years and that questions asked by a judge during a search warrant application are "fairly routine."

¶7 The circuit court concluded that the reconstruction was adequate, and it denied Peterson's suppression motion. Distinguishing Peterson's case from those in which evidence suppression was appropriate, the court reiterated its view that the presented body camera footage "rescue[d] this case" and that Peterson's due process rights were not violated by the warrant application process. The court also declined to find a violation of Peterson's constitutional right to appellate review, noting the referenced body camera footage allowed an appellate court "to discern the considerations by Judge Rosborough based on the responses to his questions by Officer Gjefle."

¶8 Although Peterson raised several arguments in his suppression motion, he renews on appeal only one—his position that the blood evidence should be suppressed because the warrant application process was improper. Specifically, Peterson argues on appeal that his due process rights were violated because the warrant application conversation between Gjefle and Judge Rosborough was not recorded in its entirety.

4

## DISCUSSION

¶9     "In reviewing a motion to suppress, we uphold the circuit court's findings of fact unless they are clearly erroneous, and review the application of constitutional principles to those facts de novo." ***State v. Grady***, 2009 WI 47, ¶13, 317 Wis. 2d 344, 766 N.W.2d 729.  "Suppression is only required when evidence has been obtained in violation of a defendant's constitutional rights or if a statute specifically provides for the suppression remedy." ***State v. Raflik***, 2001 WI 129, ¶15, 248 Wis. 2d 593, 636 N.W.2d 690 (citations omitted).  There is no statutory provision for suppression as a remedy for failure to comply with WIS. STAT. § 968.12, which governs the issuance of search warrants.  Therefore, the only issue is whether the alleged failure to comply with the statutory procedure violated one of Peterson's constitutional rights.  *See **Raflik***, 248 Wis. 2d 593, ¶¶15-16 (identifying three potential constitutional violations in this context:  a violation of the Fourth Amendment "in its own right"; the lack of "probable cause on the record to support the warrant and the Fourth Amendment's probable cause requirement would arguably not be met"; and a violation of "the Fourteenth Amendment due process right to meaningful judicial review and her right to a meaningful appeal under Article I, Section 21 of the Wisconsin Constitution.").

¶10     The procedures for obtaining a telephonic search warrant are set forth in WIS. STAT. § 968.12(3).  Under para. (a), "[a] search warrant may be based upon sworn oral testimony communicated to the judge by telephone, radio or other means of electronic communication." *See* § 968.12(3)(a).  If the testimony is communicated through telephonic means, "The person who is requesting the warrant shall prepare a duplicate original warrant and read the duplicate original warrant, verbatim, to the judge.  The judge shall enter, verbatim, what is read on the original warrant." *See* § 968.12(3)(b).  Subsection (3)(d) allows a judge to take

sworn testimony over the phone to support the issuance of a warrant, and in that event "[t]he judge or requesting person shall arrange for all sworn testimony to be recorded either by a court reporter or by means of a voice recording device." *See* § 968.12(3)(d).

¶11    While a complete search warrant application transcript "guarantees that the defendant has the opportunity to analyze the proceedings of the trial court and to challenge any errors," a violation of WIS. STAT. § 968.12(3)(d) does not automatically constitute a constitutional violation triggering evidence suppression. *Raflik*, 248 Wis. 2d 593, ¶¶31, 39.  Rather, "a reconstructed warrant application may serve as a functional equivalent of the record of the original application.  Such a reconstruction, when made appropriately, can protect the defendant's right to a meaningful appeal, as well as the defendant's ability to challenge the admission of evidence in a suppression hearing." *Id.*, ¶39.

¶12    In *Raflik*, an officer called in a telephonic search warrant application and the judge took testimony over the phone, but the call was mistakenly not recorded. *Id.*, ¶¶5-6.  The officer and the judge got together the next day and reconstructed the officer's testimony.  *Id.*, ¶¶7-10.  Our supreme court determined that the warrant process fulfilled all the requirements of the Fourth Amendment, and that the reconstruction of the warrant application process adequately protected Raflik's right to judicial review.  *Id.*, ¶21.  As the court explained, "[t]he essential thing is that proof be reduced to permanent form and made a part of the record, which may be transmitted to the reviewing court." *Id.*, ¶28 (citation omitted).

¶13    The *Raflik* court pointed to several facts to support its conclusion.  Specifically, the court noted that:  (1) the reconstructed testimony was short and involved only one witness; (2) the facts described during the reconstruction "were

uncomplicated and easily remembered" by the witness; (3) the facts set forth in the reconstruction were corroborated by the witness's affidavit and other documents filed during the original warrant application; (4) the reconstruction occurred the day after the original warrant application; and (5) all the participants involved in the original warrant application were available to the circuit court when the record was reconstructed. *Raflik*, 248 Wis. 2d 593, ¶¶42-43.

¶14 Here, as in *Raflik*, Gjefle's sworn testimony to support the warrant application was short, with the phone conversation lasting only approximately three minutes and, similarly, involving only one witness. Further, the facts recited during the reconstruction were simple, and were easily remembered by Gjefle after he refreshed his recollection with the body camera recording of his portion of conversation, which represented the vast majority of the pertinent discussion between Gjefle and the judge. The facts were also corroborated by the body camera recording and by Gjefle's affidavit, which had been filed simultaneously with the warrant application. Finally, as in *Raflik*, every person involved in the original warrant application process (here, Gjefle and Judge Rosborough) was available to the circuit court when the record was reconstructed. Under these circumstances, the reconstruction was sufficient to provide Peterson with the right to meaningful judicial review both in the circuit court and on appeal. *See Raflik*, 248 Wis. 2d 593, ¶21.

¶15 Peterson emphasizes that over two years passed between the warrant application and the reconstruction of the record. As part of this argument, he notes that the *Raflik* court took into consideration the short passage of time between the events and argues that the passage of time here makes a proper record reconstruction "impossible as a matter of law." Apart from his assertion, however, Peterson provides no authority for this proposition. Although it is true that the reconstruction

in *Raflik* occurred the day after the warrant application in that case, Peterson fails to demonstrate why the delay in this case makes the reconstruction "impossible" or even unreliable.

¶16 We conclude that, under the circumstances here, the gap between the warrant application and reconstruction does not negate the adequacy of the reconstruction. The conversation at issue was a total of only three minutes long and one side of the conversation was completely recorded. Moreover, the side that was recorded was that of Gjefle, who did most of the talking and provided the majority of the content during the conversation. Finally, as the circuit court found, the officer and the judge were discussing a rather routine type of search warrant; it follows that the judge, based on his then-thirty years on the bench, had substantial experience in considering similar search warrant applications and as a result had a firm idea of the types of questions that he would ask an officer seeking a warrant of this type.

¶17 Peterson concedes that Gjefle had probable cause to obtain the warrant in question and that the scope of the warrant was appropriate. However, he argues that the fact that the entire warrant application process was not recorded violates his due process rights because, without the complete recording, "[he] cannot fully evaluate … Judge Rosborough's neutrality." Peterson's due process argument fails on its merits.

¶18 First, Peterson identifies nothing in the record to support an inference that Judge Rosborough acted unfairly. Without any evidence to the contrary, we presume that judges act "fairly, impartially, and without bias." *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385. Given this presumption and the lack of record support to the contrary, there is no basis from which to

conclude that Judge Rosborough was biased or unfair, or even that he misunderstood any facts.

¶19     Second, as we have explained, the body camera footage and Gjefle's sworn affidavit are sufficient for both the circuit court and this court on appeal to conclude that the warrant was properly granted.  *See **Raflik***, 248 Wis. 2d 593, ¶42. Under these circumstances, we conclude that the reconstruction of the record adequately protected Peterson's "right to a meaningful appeal, as well as [his] ability to challenge the admission of evidence in a suppression hearing." *See **id.***, ¶39.  In other words, the reconstruction did not violate Peterson's due process rights.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.