STATE of Wisconsin, Plaintiff-Respondent,

v.

Russell S. KRANCKI, Defendant-Appellant.†

Court of Appeals

*No. 2013AP1989–CR. Submitted on briefs April 28, 2014.
—Decided June 18, 2014.*

2014 WI App 80

(Also reported in 851 N.W.2d 824.)

† Petition for Review denied September 24, 2014.

505

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Gregory W. Wiercioch* of *Frank J. Remington Center*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Gabe Johnson-Karp*, assistant attorney general, and *J.B.Van Hollen*, attorney general.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. REILLY, J.    Russell S. Krancki appeals his conviction for operating a motor vehicle while intoxicated (OWI) arguing that a "formidable combination of errors" by his trial counsel both individually and collectively violated his constitutional rights and undermined confidence in the jury's guilty verdict. Krancki alleges that trial counsel was ineffective for making and breaking a promise in opening statements that Krancki would testify, for permitting references to his pretrial silence as to there being another driver, and for not obtaining a stipulation on one of the elements of the crime. We disagree.

## BACKGROUND

¶ 2.    While responding to a report that Krancki was driving while intoxicated, a police officer observed Krancki's vehicle pull into his driveway and Krancki emerge from the vehicle. Krancki was subsequently charged with OWI, as a seventh offense. Krancki never disputed he was intoxicated at the time that he encountered the officer. At trial, the only issue was whether the State could establish beyond a reasonable doubt that Krancki was driving at the time of his intoxication.

506

¶ 3.   Prior to trial, Krancki insisted to his trial counsel that he had not been operating his vehicle at the time of his arrest, that someone named "Jason" had been driving his vehicle instead, and that he wanted to testify regarding "Jason." Although Krancki's counsel promised during opening statements at trial that Krancki would testify that "Jason" had been driving at the time that he was intoxicated, Krancki never testified. Krancki's defense instead focused on the arresting officer's limited view of Krancki's vehicle when it pulled into his driveway and the fact that the officer could not see through the vehicle's tinted windows to identify the driver while the vehicle was in operation or whether there was another person in the vehicle. Krancki was convicted by a jury.

¶ 4.   Postconviction counsel moved for a new trial arguing that trial counsel was ineffective on three grounds:   (1) by promising that Krancki would testify to an alternate version of events and then not calling upon Krancki to testify or explaining why Krancki did not take the stand, (2) by failing to object to references to Krancki's silence regarding whether someone else had been driving, and (3) by failing to prevent references that Krancki was subject to a blood alcohol concentration (BAC) of .02 percent. The court held a *Machner*[1] hearing where Krancki's trial counsel was the sole witness. The court found that even if trial counsel's performance was deficient, that performance did not prejudice Krancki, and denied Krancki's motion.[2] Krancki appeals.

---

[1] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[2] The Honorable James R. Kieffer presided at trial and entered an original judgment of conviction. The Honorable Donald J. Hassin, Jr. signed an amended judgment of conviction and the order denying Krancki's request for a new trial.

## DISCUSSION

¶ 5.    To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When reviewing a claim for ineffective assistance of counsel, we will not overturn a circuit court's findings of fact unless they are clearly erroneous, but we independently review the ultimate determination of whether counsel's performance was deficient and prejudicial to the defense. *State v. Johnson*, 153 Wis. 2d 121, 127–28, 449 N.W.2d 845 (1990). For the reasons that follow, we find that Krancki's trial counsel was not ineffective.

*Broken Promise*

¶ 6.    Krancki first alleges that his trial counsel was ineffective when he told the jury that Krancki would testify, then did not call upon Krancki to testify and never provided an explanation when Krancki failed to testify. We reject Krancki's argument as any error committed by counsel was invited by Krancki's own decisions on whether or not to testify, and regardless, Krancki was not prejudiced by counsel's statement.

¶ 7.    Prior to trial, Krancki told his trial counsel that a man named "Jason" had given Krancki a ride home from a bar, then "jumped out of the car" when he saw a police officer waiting at Krancki's residence. Krancki was not able to provide a full name or phone number for "Jason," and trial counsel had doubts about Krancki's story. Trial counsel said that Krancki, how-

508

ever, "insist[ed]" that he wanted to testify about "Jason" based on his belief that the jury would believe him as he previously had been able to get a criminal charge dismissed after testifying.

¶ 8. During opening statements, trial counsel briefly outlined the story that he had been told by Krancki and that Krancki wanted to tell the jury, stating, "And I want you to be sure that he drove this car when you hear Mr. Krancki testify to you that he had a friend from the bar, a guy named Jason drive him home . . . ." Krancki changed his mind about testifying and never took the stand. At the *Machner* hearing, trial counsel stated that he was able to persuade Krancki on the second day of trial to not testify because "it became clear to me that the jury simply was not buying the idea that there was somebody else driving" and "if I put him on the stand, there was simply no way that he wasn't going to hurt our case." Trial counsel believed that he could persuade the jury without Krancki's testimony as "there had been some additional evidence submitted prior to that that I thought would allow us to poke a hole" in the State's case.

¶ 9. Krancki now asserts that this was deficient performance as his "unexplained failure to testify likely diminished trial counsel's credibility in the eyes of the jurors and fueled a host of prejudicial inferences about the evidence." Krancki cites to several federal cases for their persuasive value to argue that "unfulfilled promises to present personal testimony from a criminal defendant are highly suspect," *Barrow v. Uchtman*, 398 F.3d 597, 607 (7th Cir. 2005), and failure to fulfill a promise that is not the result of unforeseeable events may cause harm, *see United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 257 (7th Cir. 2003).

¶ 10. Krancki's argument overlooks that his trial counsel was largely following Krancki's directives when he made the decisions about which Krancki now complains. Supreme Court Rule 20:1.2(a) requires counsel to "abide by the client's decision, after consultation with the lawyer, as to . . . whether the client will testify." The choice of whether to testify is both a tactical decision and a criminal defendant's constitutional right. *State v. Albright*, 96 Wis. 2d 122, 129, 291 N.W.2d 487 (1980). "A defendant who insists on making a decision which is his or hers alone to make in a manner contrary to the advice given by the attorney cannot subsequently complain that the attorney was ineffective for complying with the ethical obligation to follow his or her undelegated decision." *State v. Divanovic*, 200 Wis. 2d 210, 225, 546 N.W.2d 501 (Ct. App. 1996).

¶ 11. According to the undisputed testimony at the *Machner* hearing, Krancki told his attorney that he wanted to testify that a man named "Jason" had been driving the night that he was arrested. He "insist[ed]" upon testifying because he thought that he had been successful in having a criminal charge dismissed previously on the basis of his testimony. Even though trial counsel had doubts about Krancki's story, counsel was ethically bound to Krancki's decision to testify as that was Krancki's constitutional right, and counsel's brief statement to the jury about Krancki's testimony was a direct result of a decision dictated by Krancki. "If a defendant selects a course of action, that defendant will not be heard later to allege error or defects precipitated by such action. Such an election constitutes waiver or

abandonment of the right to complain." *State v. Robles*, 157 Wis. 2d 55, 60, 458 N.W.2d 818 (Ct. App. 1990) (citation omitted).[3]

¶ 12.   Even if we were to conclude that trial counsel was deficient for promising that Krancki would testify, we find no prejudice flowed from that broken promise. Krancki's theory of defense both during and after trial was that he was not driving the vehicle. The jury knew what Krancki's defense was, with or without his testimony and with or without his trial counsel's reference to Krancki's potential testimony. We disagree with Krancki that counsel's opening statement was prejudicial.

### Testimony on Krancki's Silence

■

¶ 13.   Krancki next claims that his trial counsel was ineffective for permitting references related to Krancki's pretrial silence regarding another possible driver of his vehicle. Krancki alleges these references violated his constitutional right to remain silent. We disagree that trial counsel was ineffective for failing to object to these references. Even if they did constitute constitutional error, such error was harmless as Krancki was not prejudiced.

¶ 14.   Toward the end of testimony by the arresting officer, the court permitted jurors to submit questions to the officer. Without objection, the court permitted the jury question:   "Did [Krancki] indicate he had not been driving?" In response to this question, the

---

[3] Likewise, the court's statement to the jury at the end of the first day of trial that the defendant would be testifying was due to Krancki's continued assertion at that time that he wanted to exercise his right to testify.

officer answered, "He never made that statement, no." The State followed up during rebuttal testimony by asking the officer, "When you made contact with the defendant and when you're on the scene administering field sobriety tests, did he ever tell you he was not the driver?" The officer responded, "He never stated he was the driver. He did not state someone else was driving the vehicle." The officer testified that he did not ask Krancki whether he was with someone else. The State argued in closing:

> [Krancki] didn't need to have said that he wasn't the driver, but don't you think that's something you can take into consideration? That as he is talking to the officer, as the officer is asking him about his drinking, administering the HGN test, the finger to nose test, the alphabet, the counting, at some point the defendant would have said, "Wait a minute. You got the wrong guy. There was someone else driving that car." He didn't do that.

¶ 15.   Krancki argues that trial counsel's failure to object to these references hurt his defense "by appealing to a common-sense (but constitutionally prohibited) sentiment:   If he really didn't do it, why didn't he say so?" The State responds that all of the references to Krancki's failure to deny driving his vehicle involved questioning in a noncustodial situation and, therefore, the references were permissible under the narrowest reading of the plurality decision in *Salinas v. Texas*, 570 U.S. ___, 133 S. Ct. 2174 (2013) (plurality opinion).[4]

---

[4] The parties did not argue, either before the circuit court or on appeal, whether Krancki's Fifth Amendment right to remain silent is subject to forfeiture or waiver at trial, or whether it constitutes plain error. Krancki instead couches the error in an ineffective assistance of counsel claim, but argues as if it were subject to waiver by analyzing whether there was

¶ 16. At the outset we note that we are uncomfortable in employing *Salinas*, given it was a plurality decision. We believe *Salinas* stands for the proposition that the Fifth Amendment is not violated by the use of a criminal defendant's silence in answer to a police question posed in a noncustodial interview when the defendant did not explicitly invoke his or her right to remain silent as the reason for refusing to answer the question. *Salinas*, 133 S. Ct. at 2180. In *Salinas*, the defendant voluntarily participated in a police interview, during which he did not respond to an officer's question about whether his shotgun would match shells recovered at the scene of a murder. *Id.* at 2178. At his trial, prosecutors used his reaction to this question as evidence of his guilt, and he was convicted. *Id.* The United States Supreme Court affirmed the conviction, concluding in its plurality decision that the use of Salinas's silence from this noncustodial interview did not violate his constitutional right, as he had not affirmatively asserted that he was relying on his Fifth Amendment right to silence as the reason he did not answer the question. *Id.*

---

constitutional error and whether the error was harmless. We note that our supreme court in *State v. Fencl*, 109 Wis. 2d 224, 232–33, 238–39, 325 N.W.2d 703 (1982), analyzed unobjected-to references to Fencl's pre- and post-*Miranda* silence for harmless error rather than for ineffective assistance of counsel, *see Miranda v. Arizona*, 384 U.S. 436 (1966). In *State v. Mayo*, 2007 WI 78, ¶¶ 29, 46–47, 301 Wis. 2d 642, 734 N.W.2d 115, the court conducted a plain error analysis into whether a prosecutor's unobjected-to comments on a defendant's pre-*Miranda* silence constituted a violation of his constitutional right and whether the error was harmless. As employment of each of the analyses would essentially involve the same test in this case, i.e., whether Krancki's constitutional right to remain silent was infringed and whether there is a reasonable possibility this infringement contributed to the outcome, we need not resolve this issue.

¶ 17. In contrast to *Salinas*, Krancki was never asked whether he was or was not the driver, and therefore, Krancki had no opportunity to affirmatively assert his Fifth Amendment right to remain silent in response to that question. Furthermore, the question asked by the jury was not confined only to the officer's noncustodial encounters with the defendant and, therefore, could have impermissibly implicated Krancki's post-*Miranda* exercise of his right to remain silent. *See State v. Sorenson*, 143 Wis. 2d 226, 263, 421 N.W.2d 77 (1988). We find *Salinas* inapplicable to the fact situation before us.

¶ 18. Assuming error, we find that Krancki was not prejudiced by any error as to his "silence." As Krancki concedes, the question as to whether he volunteered to the arresting officer that someone else was driving his vehicle reflects "a common-sense . . . sentiment." We do not ask jurors to abandon their common sense at the courthouse door. *See State v. Smith*, 2012 WI 91, ¶ 36, 342 Wis. 2d 710, 817 N.W.2d 410. The witnesses at the scene testified that they did not see anyone else near or in Krancki's vehicle, and Krancki's own investigator testified that if anyone would have gotten out of the vehicle that he or she would have been seen. The officer testified that he saw Krancki's vehicle as it pulled into the driveway and saw Krancki emerge from the driver's door while holding the keys to the vehicle. Considering the totality of the evidence, there is not a reasonable probability that the jury would have had a reasonable doubt about Krancki's guilt absent the references to Krancki's pretrial failure to identify an alternate driver. *See Strickland*, 466 U.S. at 695; *see also State v. Mayo*, 2007 WI 78, ¶¶ 29, 47, 301 Wis. 2d 642, 734 N.W.2d 115 (harmless error standard as part of

plain error analysis); *State v. Fencl*, 109 Wis. 2d 224, 238, 325 N.W.2d 703 (1982) (harmless error standard).

*References to .02 BAC*

■

¶ 19.   Krancki argues that his trial counsel was ineffective for not obtaining a court order requiring the State "to stipulate or prevent the jury from hearing evidence" that he was subject to a .02 percent BAC limit. His argument presumes that jurors would know that as Krancki was subject to a .02 BAC limit (rather than .08 percent or some other limit) that he had multiple prior OWI convictions and would use that information to infer he had a propensity to drive while intoxicated. We are not persuaded.

¶ 20.   Krancki primarily relies on *State v. Alexander*, 214 Wis. 2d 628, 651, 571 N.W.2d 662 (1997), where our supreme court held that the State could not admit evidence of a defendant's prior OWI convictions solely to prove the defendant has been convicted when the defendant has admitted to the convictions. The *Alexander* court reasoned that the danger of unfair prejudice outweighed the probative value of the defendant's admission to prior convictions. *Id.* at 645; *see also* Wis. Stat. § 904.03 (2011–12). The problem with Krancki's reliance on *Alexander*, however, is that the State did not admit evidence of Krancki's prior OWI convictions. The State admitted evidence that he had a .26 BAC, which was probative to the jury question concerning whether he was over the .02 BAC limit at the time that he drove. This evidence was not unfairly prejudicial; it was evidence necessary to prove an element of the crime charged.

¶ 21.   Trial counsel testified at the *Machner* hearing that he had requested a stipulation from the State

that Krancki's BAC was over the permissible limit and that his request was rejected. To suggest that trial counsel's performance was deficient for not asking the court to order the State to so "stipulate" borders on absurd.

### Cumulative Effect

¶ 22.   Krancki argues that cumulating each of the individual errors by his trial counsel results in prejudice as a whole. We disagree. Krancki built his case on raising reasonable doubt as to whether he was driving. The fact that the jury did not buy Krancki's defense was not because of any of the errors alleged by Krancki, but because Krancki provided no evidence from which the jury could conclude that there was any driver other than himself. We understand why Krancki did not want to testify:  he would have had to admit to thirteen prior criminal convictions and his "Jason" alibi would have come under rigorous scrutiny.

*By the Court.*—Judgment and order affirmed.