**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 7, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| Appeal No. | **2022AP1995-CR** | Cir. Ct. No. 2021CF1227 |
|---|---|---|
| STATE OF WISCONSIN | | IN COURT OF APPEALS DISTRICT IV |

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

RAUL HERRERA RIVERA,

  DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dane County: ELLEN K. BERZ, Judge. *Affirmed*.

Before Blanchard, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Raul Herrera Rivera appeals a judgment of conviction for operating a motor vehicle with a prohibited alcohol concentration

following a jury trial. He argues that the circuit court erred in rejecting pretrial suppression motions and separately erred in various ways at trial.

¶2    The pretrial motions all relate to the fact that Herrera Rivera was pulled over by a police officer for speeding and the officer extended the traffic stop to investigate the potential offense of operation of a motor vehicle while intoxicated ("OWI").[1]    Herrera Rivera argues that the circuit court erred in concluding that the officer had the reasonable suspicion needed to extend the scope of the traffic stop. In the alternative, Herrera Rivera argues that the officer lacked probable cause to arrest him for driving with a prohibited blood alcohol concentration. Herrera Rivera further contends that the court erred in rejecting his motion based on the procedure used by the officer to obtain the search warrant that provided authority for a blood draw.

¶3    Regarding trial events, Herrera Rivera argues that the circuit court erred in the following ways:  denying his motion to strike a member of the jury venire for cause, which forced him to use a peremptory strike; limiting defense counsel's cross examination of an expert witness called by the prosecution; and permitting the prosecution to elicit from a witness several references to Rivera Herrera having a "restriction" that set his prohibited alcohol concentration at .02 grams per 100 milliliters.

---

[1] We follow the convention of using "OWI" as an umbrella term that encompasses both operating while under the influence of an intoxicant, contrary to WIS. STAT. § 346.63(1)(a) (2021-22), and operating with a prohibited alcohol concentration, contrary to § 346.63(1)(b). As necessary, we use separate references for the distinct charges of operating a motor vehicle while under the influence and operating with a prohibited alcohol concentration.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4      We reject each of Herrera Rivera's arguments and accordingly affirm.

## BACKGROUND

¶5      The following is a brief overview of the facts, with additional detail provided as needed in the Discussion section below.  A police officer observed a speeding car and pulled it over in the City of Middleton.  Herrera Rivera was driving and there were two passengers.  After observing some initial indications that Herrera Rivera had been drinking, the officer asked if anyone in the car had been drinking.  All denied drinking.  The officer took Herrera Rivera's license back to his squad car, looked up his driving records, and learned that Herrera Rivera had prior OWI convictions and as a result was subject to a prohibited alcohol concentration of .02 grams per 100 milliliters.[2]

¶6      The officer had Herrera Rivera perform field sobriety tests, during which the officer observed signs that Herrera Rivera was impaired.  Herrera Rivera declined to take a preliminary breath test.  The officer arrested him for allegedly operating while under the influence.  The officer read Herrera Rivera the "informing the accused" form, and Herrera Rivera declined to submit to a warrantless test of his blood.  *See* WIS. STAT. § 343.305(3)(a), (4).

¶7      The officer applied by phone for a search warrant to test Herrera Rivera's blood.  Dane County Circuit Court Judge Juan Colás granted the

---

[2] The default prohibited alcohol concentration for vehicle operators in Wisconsin is .08 grams per 100 milliliters, but for Herrera Rivera at the time of the stop it was .02 because he had three prior OWI convictions.  *See* **State v. Diehl**, 2020 WI App 16, ¶3, 391 Wis. 2d 353, 941 N.W.2d 272; WIS. STAT. §§ 340.01(46m), 346.01(1), 346.63(1)(b).

application.[3] Herrera Rivera's blood was drawn at 2:26 a.m. and the result recorded was a blood alcohol concentration of .086.

¶8 Herrera Rivera was charged with operating a motor vehicle while under the influence and with a prohibited alcohol concentration, both as a fourth offense.[4]

¶9 Herrera Rivera moved to suppress evidence derived from the traffic stop. Specifically, as pertinent to the issues raised on appeal, he argued that the officer lacked reasonable suspicion necessary to extend what started as a speeding investigation that justified the stop into an OWI investigation, which occurred at the point when the officer asked Herrera Rivera if anyone in the car had been drinking.

¶10 Separately, Herrera Rivera argued that evidence recovered following his arrest should be suppressed because the arrest was not supported by probable cause. Probable cause was lacking, he argued in part, because the officer improperly administered the field sobriety tests, rendering unreliable the observed results of the field sobriety tests.

¶11 The circuit court held a hearing on Herrera Rivera's motion at which the officer was the only witness. The court denied the motion.

---

[3] The Honorable Ellen K. Berz decided the pretrial motions and presided over the trial in this matter.

[4] Herrera Rivera was also charged with failing to install an ignition interlock device on all vehicles he operated. *See* WIS. STAT. § 343.301(1g)(a)2.b., (am). He pleaded guilty to this charge and was sentenced based on the resulting conviction before proceeding to trial on the OWI charges.

4

¶12    Herrera Rivera filed a separate motion to suppress the blood-draw evidence obtained pursuant to the search warrant on the ground that the application and issuance of the warrant did not comply with pertinent procedures. The circuit court denied this motion without taking additional evidence.[5]

¶13    At a jury trial, the prosecution called as witnesses the arresting officer, the hospital medical technician who drew Herrera Rivera's blood, and an analyst from the state crime laboratory who tested the blood. The prosecutor argued in part that the results of the blood testing, which were based on a blood draw that occurred fewer than two hours following the officer's initial contact with Herrera Rivera, established that he was driving while under the influence and with a prohibited alcohol concentration. Defense counsel argued that the evidence regarding Herrera Rivera's driving and conduct demonstrated that he was sober, and that the blood test results did not necessarily show that he had a prohibited alcohol concentration while operating the car. The jury found Herrera Rivera guilty on both OWI counts.

¶14    The circuit court entered a judgment of conviction for operating a motor vehicle while under the influence of an intoxicant. Herrera Rivera appeals.

### DISCUSSION

### I. Motion to Suppress Based on Traffic Stop

¶15    Herrera Rivera argues that the circuit court erred in concluding that police: (1) had reasonable suspicion to extend the scope of the traffic stop to

---

[5] Herrera Rivera moved the circuit court to reconsider its denial of the second motion to suppress. The circuit court denied this motion as well.

investigate a potential OWI offense, and (2) had probable cause to arrest Herrera Rivera. We address these arguments in turn after providing pertinent legal standards and additional background from the motion hearing.

¶16 In this context we uphold the circuit court's findings of fact unless they are clearly erroneous and we independently determine whether the facts meet the pertinent constitutional standard. *See State v. Adell*, 2021 WI App 72, ¶14, 399 Wis. 2d 399, 966 N.W.2d 115.

*A. Additional Background*

¶17 The officer testified to the following at the suppression hearing. One night at approximately 12:42 a.m., the officer was in his squad car when he observed a car traveling 45 miles per hour down a street with a posted speed limit of 30. The officer followed the car. He observed it "weaving within its own lane … and … failing to maintain a consistent speed," as indicated by the fact that its brake lights came on "frequently," followed by "slight acceleration[s] of speed."

¶18 The officer pulled the car over, walked to the driver's window, and made contact with Herrera Rivera, the driver, who had two passengers. The officer informed Herrera Rivera that he had been pulled over for speeding. "[A]lmost immediate[ly]" during this initial contact, the officer smelled the odor of alcohol "coming from the vehicle," saw that Herrera Rivera's eyes were "glossy" (that is, "watery") and "bloodshot." The officer asked Herrera Rivera where he and his passengers were coming from and where they were headed. Herrera Rivera responded that they were headed to a bar in another part of Middleton. According to the officer, Herrera Rivera's speech was "slightly slurred," although the officer acknowledged that Herrera Rivera spoke with an

accent and that the officer was not familiar with his "natural speech patterns." Herrera Rivera gave the officer his driver's license during this initial contact.

¶19    The officer asked if anyone in the car had been drinking. After briefly conferring with the passengers, Herrera Rivera responded that none of them had been drinking.

¶20    The officer returned to his squad car and used Herrera Rivera's driver's license to look up records related to him that are maintained by the Wisconsin Department of Transportation. These records reflected that Herrera Rivera: had three prior OWI convictions; was required to use an ignition interlock device; and was subject to a .02 prohibited alcohol concentration limit. The officer had already observed that the car Herrera Rivera was driving did not have an ignition interlock device installed.

¶21    The officer returned to the car and asked Herrera Rivera to step out in order to undergo field sobriety tests. After Herrera Rivera got out of the car, the officer could smell alcohol coming from Herrera Rivera specifically. The officer administered the following tests: horizontal gaze nystagmus; walk-and-turn; and one-leg-stand. The officer observed multiple clues of impairment with each test. The officer requested that Herrera Rivera undergo a preliminary breath test, which Herrera Rivera refused. The officer arrested him.

¶22    Through cross-examination of the officer, counsel for Herrera Rivera adduced testimony demonstrating that, in some respects, the way in which the officer administered the field sobriety tests deviated from the officer's training. Counsel also elicited testimony regarding facts present in this case that could have clouded the accuracy of the tests in demonstrating impairment. For example, the officer testified on cross-examination that, before undergoing the tests, Herrera

7

Rivera indicated that he had suffered injuries in the past that could affect his ability to perform some of the tests. The officer acknowledged that he did not know whether Herrera Rivera had suffered injuries that might have affected the test results.

¶23 The circuit court concluded that the officer had reasonable suspicion to make an inquiry related to a possible OWI violation at the point at which the officer asked whether anyone in the car had been drinking. The court reasoned that the officer would reasonably want to know from whom the smell of alcohol was emanating, and that asking all three car occupants about their drinking that night was a reasonable way to investigate. The court also determined that the information that the officer obtained about Herrera Rivera's traffic history and .02 prohibited alcohol concentration restriction could be counted toward reasonable suspicion because the officer obtained this information as a standard part of a traffic stop.

¶24 The circuit court further concluded that the officer had probable cause to arrest for an OWI offense. The court determined that the officer had observed multiple driving behaviors that supported a reasonable inference of impairment, along with the smell of alcohol that the officer later attributed to Herrera Rivera. The circuit court found, based on its review of the officer's body camera video of the traffic stop, that Herrera Rivera's speech was slurred to the point that the court could not understand what he was saying at points in the video. The court further determined that the flaws in the officer's administration of the field sobriety tests did not deprive the tests of any weight.

## B. Extension of Traffic Stop

¶25 Herrera Rivera argues that the officer unreasonably extended the scope of the traffic stop from investigating speeding to investigating a potential OWI offense. Specifically, Herrera Rivera contends that this occurred when the officer asked him whether he had been drinking. At that time, according to Herrera Rivera, the officer lacked reasonable suspicion that an OWI offense had occurred, and therefore the circuit court erred in failing to suppress evidence gathered from that point forward. The State argues in part that, based on the evidence presented at the suppression hearing, the officer had reasonable suspicion to expand the mission of the stop when he asked about drinking. We assume without deciding that the officer extended the mission of the traffic stop for Fourth Amendment purposes at the moment identified by Herrera Rivera. However, for reasons we now explain, we agree with the State that the officer had reasonable suspicion at that time.[6]

¶26 Given that there is no dispute that it was reasonable for the officer to conduct a traffic stop of Herrera Rivera to investigate and potentially issue a ticket or warning for speeding, and further given our assumption that the officer's initial question about alcohol consumption extended the stop for Fourth Amendment purposes, we apply the following standards:

> "If, during a valid traffic stop, the officer becomes aware of
> additional suspicious factors which are sufficient to give
> rise to an articulable suspicion that the person has
> committed or is committing an offense or offenses separate

---

[6] The State also argues that, under the circumstances, the time it took for the officer to ask whether any of the car's occupants had been drinking did not extend the traffic stop in a constitutionally material way. We do not address this argument or Herrera Rivera's reply to it because we conclude that the officer had reasonable suspicion when he asked this question.

> and distinct from the acts that prompted the officer's intervention in the first place, the stop may be extended and a new investigation begun. The validity of the extension is tested in the same manner, and under the same criteria, as the initial stop."

*Adell*, 399 Wis. 2d 399, ¶16 (quoted source omitted). Reasonable suspicion must be "'grounded in specific articulable facts and reasonable inferences from those facts, that an individual is or was violating the law.'" *State v. Colstad*, 2003 WI App 25, ¶8, 260 Wis. 2d 406, 659 N.W.2d 394 (quoted source and brackets omitted). Police are "not required to rule out the possibility of innocent behavior" in determining if there is reasonable suspicion to conduct an investigative stop or extend the scope of its mission. *See id.*; *see also Adell*, 399 Wis. 2d 399, ¶30. In addition, we are to apply "common sense" in determining "what constitutes reasonableness" under the Fourth Amendment: "What would a reasonable police officer reasonably suspect in light of his or her training and experience." *State v. Waldner*, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996). "The reasonableness of a stop is determined based on the totality of the facts and circumstances." *State v. Post*, 2007 WI 60, ¶13, 301 Wis. 2d 1, 733 N.W.2d 634.

¶27 The following facts readily support the conclusion that the officer here had reasonable suspicion of an OWI offense when he asked Herrera Rivera whether anyone had been drinking. At 12:42 a.m., it was not yet bar time, but it was getting close. The officer observed Herrera Rivera's car travelling approximately 15 miles per hour above the speed limit, weave inside of its lane, and engage in erratic breaking before stopping at a red light. *See Post*, 301 Wis. 2d 1, ¶¶25-26, 36 (weaving within a single lane and time of night can contribute to reasonable suspicion of intoxicated driving); *Adell*, 399 Wis. 2d 399, ¶25 (although less indicative of intoxicated driving than other forms of risky driving, officer could consider speeding as a sign that driver was operating with

10

prohibited alcohol concentration). Immediately after making contact with Herrera Rivera, the officer saw that his eyes were "glossy" and "bloodshot," and the officer smelled the odor of alcohol coming from inside the car. *See State v. Tullberg*, 2014 WI 134, ¶35, 359 Wis. 2d 421, 857 N.W.2d 120 ("a law enforcement officer may consider bloodshot and glassy eyes to be one of several indicators of intoxication"); *Adell*, 399 Wis. 2d 399, ¶¶19, 23 (odor of intoxicants inside vehicle can support reasonable suspicion of driving with prohibited alcohol concentration).

¶28     The circuit court's finding that Herrera Rivera's speech was slurred further some additional support for the conclusion that the officer had reasonable suspicion of an OWI offense. Herrera Rivera argues that the body camera video establishes that his speech was not slurred at all and therefore the circuit court clearly erred in making this finding. In our own review of the video, it is not clear whether Herrera Rivera's speech was slurred or not. Given this, we cannot say that the circuit court clearly erred in interpreting the audio from the video to detect slurring, nor can we conclude that the court could not credit the testimony of the officer that he detected slight slurring. Under these circumstances, Herrera Rivera has not established clear error, although given both the officer's testimony on this point and what we discern from the video it could not count for much in the analysis because the slurring would have been slight.

¶29     Herrera Rivera emphasizes that some of his driving conduct—*e.g.*, his obeying a stop light and promptly pulling over when the officer activated the squad car's emergency lights—did not support the inference that Herrera Rivera was committing an OWI offense. It is true that these specific facts do not support reasonable suspicion of drunk driving, but neither do they undermine the reasonable inference of drunk driving supported by the facts we note above.

### C. Probable Cause to Arrest

¶30 Herrera Rivera argues that the circuit court erred in concluding that the officer had probable cause to believe that Herrera Rivera had committed an OWI offense justifying the officer's decision to arrest him without a warrant. *See State v. Blatterman*, 2015 WI 46, ¶29, 362 Wis. 2d 138, 864 N.W.2d 26 ("'probable cause to arrest refers to that quantum of evidence within the arresting officer's knowledge at the time of the arrest that would lead a reasonable law enforcement officer to believe that the defendant was operating a motor vehicle at a prohibited alcohol concentration'" (quoted source and alteration marks omitted)). Specifically, Herrera Rivera argues that the results of the field sobriety test should have no weight due to defects in the way the officer administered the tests, and that Herrera Rivera's refusal to take a preliminary breath test should also be given no weight. The State argues that the field sobriety testing and Herrera Rivera's refusal can be considered and support the conclusion that there was probable cause to arrest. But the State further argues in the alternative that there was probable cause even without considering these facts. We conclude that, assuming without deciding that the preliminary breath test refusal would not support probable cause, the field sobriety testing provides some support. We

further conclude that the testing and other relevant indicia provided probable cause to arrest for prohibited alcohol concentration.[7]

¶31     In addition to the signs of intoxication noted in our discussion of the stop-extension issue, at the time of arrest the officer was aware of additional evidence that Herrera Rivera had been driving with a prohibited alcohol concentration. Significantly, before conducting the field sobriety tests, the officer learned that Herrera Rivera had prior OWI convictions and was subject to a prohibited blood alcohol concentration of .02. *See Blatterman*, 362 Wis. 2d 138, ¶¶36-38 ("Police may properly consider prior convictions in a probable cause determination" and they are "especially relevant" to probable cause to arrest for a prohibited alcohol concentration when the prior convictions reduce the prohibited threshold to .02). In addition, after Herrera Rivera got out of the car to undergo field sobriety testing, the officer determined that Herrera Rivera in particular smelled of alcohol.

¶32     Moreover, Herrera Rivera fails to show that the circuit court clearly erred in finding that the results of the field sobriety tests provided at least some

---

[7] We note that the parties do not address on appeal one ground on which the circuit court appeared to conclude that there was probable cause, which we also do not address. The court concluded that there was probable cause based on a violation of the requirement that Herrera Rivera drive a vehicle that has an ignition interlock device installed, a restriction that would have been known to the officer at the time of the arrest. Herrera Rivera's counsel said to the circuit court that he was "not challenging the probable cause to arrest for an IID violation." Despite that statement, counsel also argued that for police "[t]o request a blood draw from Mr. Herrera Rivera [following arrest]," they "would need probable cause that he committed an impaired-driving offense." Because neither side addresses the apparent ignition interlock device violation as a basis to affirm, we do not address this topic further. Instead, we reject Herrera Rivera's probable cause argument for the reasons stated in the text.

support for probable cause to arrest.[8] The court was presented with detailed arguments regarding how the tests as administered by the officer deviated from how officers are trained to give the tests, in addition to testimony that Herrera Rivera told the officer that he had injuries that affected his ability to balance. The court found that the deviations were not significant enough to deprive the tests' results of meaning. On appeal, Herrera Rivera summarizes the same defects, but without establishing how they are incompatible with the court's finding that the tests' results added some evidentiary weight in support of probable cause. Further, the officer was not required to infer that any difficulty Herrera Rivera had with his balance was caused by something other than impairment. *See **Tullberg***, 359 Wis. 2d 421, ¶35 (officer weighing whether there is probable cause may consider indicia of intoxication that could have an innocent explanation).

## II. Search Warrant Application Procedure

¶33 Herrera Rivera argues that the circuit court erred in denying, without holding an evidentiary hearing, his motion to suppress based on the officer's application for the search warrant to draw Herrera Rivera's blood. Specifically, he contends that his motion alleged with sufficient particularity that the procedures required by WIS. STAT. § 968.12 were not followed. The suppression motion alleged the following: the officer emailed an unsworn affidavit to the circuit court judge and then called the judge regarding the warrant; and the issued warrant indicated that the judge swore in the officer during a phone call that was not recorded. According to Herrera Rivera's motion, the phone call in which the

---

[8] As Herrera Rivera acknowledges, defects in the administration of the tests go to their evidentiary weight and not their admissibility. *See **City of West Bend v. Wilkens***, 2005 WI App 36, ¶14, 278 Wis. 2d 643, 693 N.W.2d 324.

officer swore in the officer should have been recorded, based on a provision of the procedure for applying for a warrant "upon oral testimony" in § 968.12(3) and case law relating to § 968.12(3). *See* § 968.12(3)(d); ***State v. Raflik***, 2001 WI 129, ¶¶2-5, 15, 52, 248 Wis. 2d 593, 636 N.W.2d 690. Herrera Rivera argues that, if true, these allegations placed a burden on the prosecution to "reconstruct[]" the record of the unrecorded call. He further argues that, if the prosecution could not show by a preponderance of the evidence that a reliably reconstructed record established probable cause, the evidence obtained pursuant to the warrant must be suppressed. *See **Raflik***, 248 Wis. 2d 593, ¶57 (suppression of evidence seized pursuant to warrant should not be suppressed when based on reconstructed record of telephonic application that a preponderance of the evidence establishes was reliable and the application shows probable cause). We agree with the State that the circuit court appropriately denied Herrera Rivera's motion without a hearing based on how the pertinent provisions of § 968.12 apply to facts alleged in the motion.

¶34  A defendant is entitled to an evidentiary hearing for purposes of developing a factual record to support a pretrial motion when all of the following "'satisfy the court of a reasonable possibility that an evidentiary hearing will establish the factual basis on which the defendant's motion may prevail'": "'the motion, alleged facts, inferences fairly drawn from the alleged facts, offers of proof, and defense counsel's legal theory.'" ***State v. Velez***, 224 Wis. 2d 1, 13, 589 N.W.2d 9 (1999) (quoted source omitted). Allegations that fail to raise a material question of fact do not require the circuit court to hold a hearing. *See **id.*** at 17. We review de novo whether the defendant has met the burden necessary to require the circuit court to hold an evidentiary hearing. *See **id.*** at 18. If no hearing is required, the circuit court exercises its discretion in determining whether to hold a

15

hearing anyway. *See id.* Herrera Rivera's motion also requires the interpretation of WIS. STAT. § 968.12, which calls for de novo review on appeal. *See State v. Stewart*, 2018 WI App 41, ¶18, 383 Wis. 2d 546, 916 N.W.2d 188.

¶35 We begin with WIS. STAT. § 968.12(2), which is the provision that Herrera Rivera's motion alleged was used here. Subsection (2) covers applications for a warrant based on an affidavit. It states in pertinent part that:

> A search warrant may be based upon sworn complaint or affidavit, or testimony recorded by a phonographic reporter or under sub. (3)(d), showing probable cause therefor. The … affidavit … may be upon information and belief. The person requesting the warrant may swear to the … affidavit before a … judge, or a judge may place a person under oath via telephone …, without the requirement of face-to-face contact, to swear to the complaint or affidavit. The judge shall indicate on the search warrant that the person so swore to the complaint or affidavit.

On its face, sub. (2) does not require that a phone call between the applicant and the reviewing judge must be recorded—telephonically recorded testimony is described as one means of applying for a warrant separate from a "sworn complaint or affidavit."

¶36 Here, Herrera Rivera alleged that the officer submitted an affidavit applying for a warrant and that the subsequently issued warrant indicated that it was "sworn to by telephone." Moreover, the warrant indicates that the judge issued the warrant on probable cause "[b]ased upon the affidavit." Assuming Herrera Rivera's allegations are true, they appear to demonstrate that the procedural requirements of WIS. STAT. § 968.12(2) were satisfied.

¶37 Herrera Rivera's argument to the contrary is based on a recording requirement described in § 968.12(3). Subsection (3) authorizes, in pertinent part,

16

the issuance of search warrants "based upon sworn oral testimony communicated to the judge by telephone … under the procedure described" in the other provisions of sub. (3). *See* § 968.12(3)(a). Under § 968.12(3)(d),

> [w]hen a caller informs the judge that the purpose of the call is to request a warrant, the judge shall place under oath each person whose testimony forms a basis of the application and each person applying for the warrant. The judge or requesting person shall arrange for all sworn testimony to be recorded either by a court reporter or by means of a voice recording device. The judge shall have the record transcribed. The transcript, certified as accurate by the judge or reporter, as appropriate, shall be filed with the court.

¶38 Herrera Rivera argues that the telephonic swearing in of an officer, followed by the officer swearing to the truthfulness of the affidavit under WIS. STAT. § 968.12(2), constitutes "sworn oral testimony communicated to the judge by telephone" upon which a warrant "may be based" under the procedure in § 968.12(3). *See* § 968.12(3)(a). However, this relies on an unreasonable interpretation of § 968.12(2) and (3), viewed together. It is true that these subsections deal substantively with the same topic—namely, the application for search warrants—and they overlap on some procedural points. For example, as noted, sub. (2) recognizes that a warrant application can be based on the recording of testimony as specified in § 968.12(3)(d). Yet the only reasonable interpretation of these provisions as a whole is that relying on recorded testimony versus a sworn affidavit are separate procedures for establishing the probable cause needed to procure a search warrant. Herrera Rivera's purported importation of § 968.12(3)(d) into the § 968.12(2) procedure would essentially collapse the specific requirements of one procedure into the other.

¶39 The "sworn oral testimony" on which a warrant may be based—as referenced in WIS. STAT. § 968.12(3)(a) when interpreted in conjunction with

§ 968.12(3)(d)—is a reference to the officer's allegations of fact that serve as the basis for the judge to assess probable cause for obtaining a warrant. *See* § 968.12(3)(d) ("When a caller informs the judge that the purpose of the call is to request a warrant, the judge shall place under oath each person *whose testimony forms a basis of the application* and each person applying for the warrant." (emphasis added)). This contrasts with the more limited purpose of swearing to the truthfulness of an affidavit under § 968.12(2). The purpose of this aspect of subsection (2) is to allow for the applicant to swear to the truth of the separate, substantive allegations contained in an affidavit. There is no need for a recording of the phone call in which the judge swears in the officer, so long as the judge indicates on the warrant that the officer was sworn in and has attested to the truth of the averments in the affidavit and the separate substantive allegations in the affidavit serve to establish probable cause. Under these circumstances, contrary to Herrera Rivera's motion and argument on appeal, the record will contain the averments of the officer, which can be scrutinized for purposes of pretrial motions based on the Fourth Amendment's warrant requirement and on appeal.[9]

---

[9] Based on the requirement that a circuit court exercising its discretion as to whether to hold a hearing "must take into consideration the record, motion, counsel's arguments and offers of proof, and the law," *see* **State v. Velez**, 224 Wis. 2d 1, 18, 589 N.W.2d 9 (1999), Herrera Rivera argues that the circuit court here did not properly exercise its discretion in denying his motion without holding a hearing because the court failed to consider the record. We see no room for such an argument. For the reasons noted in the text, the allegations in Herrera Rivera's motion depended on an erroneous statutory interpretation and thus failed to join an issue of fact that could be addressed in a hearing. It is true that in denying the motion the court adopted, without elaboration, the reasoning that was reflected in the State's brief, and it also true that the State's brief did not analyze pertinent provisions of WIS. STAT. § 968.12. Nonetheless, the reasoning of the State's brief makes reference to the pertinent portions of the record, and the circuit court's order states that it is based on "the record in this case." Herrera Rivera fails to show that the circuit court's decision not to hold the hearing was an erroneous exercise of direction.

**III. Alleged Trial Errors**

*A. Motion to Strike Juror*

¶40    Herrera Rivera argues that the circuit court erred in denying his motion to strike a prospective juror ("the potential juror") for cause after the potential juror expressed doubt during voir dire about her ability to impartially weigh the testimony of a police officer.  He further contends that this error was not harmless.  *See State v. Sellhausen*, 2012 WI 5, ¶40, 338 Wis. 2d 286, 809 N.W.2d 14 (circuit court's failure to excuse venire member who should have been excused is harmless if defendant receives a "fair and impartial" jury).  His argument is that it was not harmless because, although he was able to use a peremptory strike to keep the potential juror off the jury, the result was that two others who were empaneled ("the two empaneled jurors") were biased against his defense.  We struggle to understand multiple premises in his biased-juror argument, but we reject it for at least the following reason.  The argument fails to apply pertinent legal standards regarding juror bias to the statements that the two empaneled jurors made during voir dire that Herrera Rivera now argues showed that they were biased.  *See State v. Lepsch*, 2017 WI 27, ¶¶21-22, 374 Wis. 2d 98, 892 N.W.2d 682 (describing different categories of juror bias).  We now provide additional background and explain our conclusion.

¶41    Herrera Rivera moved to strike the potential juror after she said during voir dire that she had an "affinity for the badge" and could not "guarantee … 100 percent" that she could be impartial with respect to an officer's testimony. On the other hand, she also repeatedly said that she would try to be impartial. After the court denied Herrera Rivera's motion to strike her for cause, Herrera Rivera used a peremptory strike to keep her off the jury.

¶42     Turning to the two empaneled jurors who Herrera Rivera contends were biased, both said during voir dire that it would be difficult for them to doubt the accuracy of a blood test result. Defense counsel asked the two empaneled jurors whether they would "be able to consider the possibility" that the test result was "not … accurate" "[i]f there[] [was] reason to believe [the test] wasn't done properly." One of the two responded, "Maybe." The other said that, because the "people who are doing the test are trained on it," he would have to be presented with a reason to doubt its accuracy; doubt would not enter his "mind instantly," apparently meaning that it would not enter his mind without first hearing evidence of a problem.

¶43     Herrera Rivera fails to provide a legally supported argument that the statements of the two empaneled jurors, taken as a whole, demonstrate that they were biased. *See id.*, ¶21 ("'To be impartial, a juror must be indifferent and capable of basing his or her verdict upon the evidence developed at trial.'" (quoted source omitted)). Indeed, he does not identify the category of bias he is alleging was present here. *See id.*, ¶22. The two empaneled jurors ultimately expressed an openness to weighing the evidence presented regarding the accuracy of the blood test results, including considering and possibly crediting evidence that something about the test process "wasn't done properly." Herrera Rivera points out that, as addressed in more detail below, the circuit court limited his ability at trial to elicit testimony about possible ways that the blood test of Herrera was not "properly" done, but that involved rulings distinct from juror bias issues and Herrera Rivera fails to articulate a legally supported argument demonstrating juror bias.

20

### B.  Limited Cross Examination of Expert

¶44    Herrera Rivera argues that the circuit court erroneously exercised its discretion in limiting in two ways the scope of his cross examination of the state crime lab analyst called by the prosecution:  (1) the court allegedly prohibited Herrera Rivera from posing to the analyst any hypothetical situations that could account for Herrera Rivera's blood test results in a way that would be consistent with his *not* operating with a prohibited alcohol concentration; and (2) the court restricted his ability to examine the analyst regarding the potential for airborne microbes to contaminate the blood sample, potentially rendering the test results unreliable.  We conclude that Herrera Rivera fails to show that the circuit court erred.

¶45    We review the circuit court's decision to limit cross examination for an erroneous exercise of discretion.  ***State v. Rhodes***, 2011 WI 73, ¶¶22-23, 336 Wis. 2d 64, 799 N.W.2d 850.  We will uphold the court's rulings when it reviews the relevant facts, applies a proper standard of law, uses a rational process, and reaches a reasonable conclusion.  ***Id.***

¶46    Relevant to both of Herrera Rivera's arguments on this issue is a general rule regarding the use of hypotheticals by expert witnesses.  The general rule is that circuit courts have discretion to exclude expert testimony regarding hypotheticals that are based on assumed facts that do not have a basis in the record.  *See **State v. Berg***, 116 Wis. 2d 360, 368, 342 N.W.2d 258 (Ct. App. 1983) ("Hypothetical questions must be based on facts which have been offered as evidence."); *see also **id.*** ("Whether opinion testimony should be admitted is a matter left to the trial court's discretion.").

21

¶47    With this background, we turn to Herrera Rivera's argument about hypothetical explanations for his blood test results. We agree with the State that his argument fails because he was ultimately able to elicit testimony from the analyst along the lines that Herrera Rivera now argues he was prevented from pursuing. *See State v. Giese*, 2014 WI App 92, ¶¶12, 28, 356 Wis. 2d 796, 854 N.W.2d 687 (defendant generally "free to challenge the accuracy of [an] expert's assumptions" including using "competing scenarios" or inferences to challenge assumptions of toxicologist that defendant had no unabsorbed alcohol in him at relevant time). The following illustrates the point.

¶48    On direct examination, the analyst testified that the blood alcohol test of Herrera Rivera's blood showed that he had an alcohol concentration of .086 at the time of the blood draw. The analyst further testified that—based on a "retrograde extrapolation" calculation which assumes that Herrera Rivera had no unabsorbed alcohol at the time that he was observed driving—his blood alcohol concentration at that time was approximately .11.

¶49    On cross examination, defense counsel asked the analyst what amount of alcohol Herrera Rivera had to have consumed on the night of the stop in order for his blood alcohol concentration "to be at or under a .02 … at the time of driving?" The analyst responded that "there's … an infinite amount of possible answers. It depends on … when the drinking occurred." The circuit court sought clarification of what counsel was asking, suggesting that the question could alternatively be posed as, "How much would [Herrera Rivera] have to have dr[u]nk to be below .02" 104 minutes before the blood was drawn, which is the amount of time that passed between when Herrera Rivera was driving and the blood draw. Counsel credited the court with framing his question "better than I did." The analyst testified in response as follows. The .086 test result "would

22

come from about six standard drinks." Further, in order for Herrera Rivera to have consumed this quantity of alcohol, assuming that his blood alcohol level was less than .02 while he drove, he would had to: "hav[e] one drink … right next to [his] car, [then] hav[e] the next five drinks right away and get in [his] car and get stopped within five, ten minutes." Thus, Herrera Rivera was allowed to elicit testimony from the analyst regarding the hypothetical situation in which, while he was operating the car, his blood alcohol level was below his prohibited limit of .02 and then, after he was pulled over and by the time of the blood draw, it increased to the .086 level reflected in his blood test.

¶50 After the State contends that this defeats Herrera Rivera's argument on this point, he fails to make a developed argument in reply. He notes that, before defense counsel posed the more open-ended exchange just noted, the court prevented defense counsel from posing a question that suggested a similar hypothetical to the analyst.[10] This earlier formulation of the open-ended questioning was, arguably, somewhat more detailed. However, Herrera Rivera does not show how the differences between what was first not allowed and later allowed could matter to our assessment of the circuit court's exercise of discretion.

---

[10] Specifically, defense counsel had earlier asked the analyst:

> [L]et's say, hypothetically, a … man [of Herrera Rivera's weight] consumes one mixed drink, [a] pretty strong one, containing four standard drinks. He gets in the car, he drives, and he's pulled over pretty shortly after he began driving. If only one standard drink had been absorbed into his bloodstream at the time he was pulled over, do you know what his [blood alcohol content] would be?

Without objection by the prosecution, the court interjected and ruled that the question must be withdrawn because it posed a hypothetical that was not based on facts in evidence (*i.e.*, that Herrera Rivera had a highly alcoholic drink soon before he was pulled over).

¶51     Turning to the argument about airborne microbes, Herrera Rivera's argument fails because it rests on a mischaracterization of the evidence. As a result, he fails to come to grips with the circuit court's basis for excluding hypothetical testimony on the topic. We now summarize the pertinent testimony.

¶52     At trial, defense counsel asked the medical technician who drew Herrera Rivera's blood about her general practices for drawing blood, given that the medical technician did not specifically recall Herrera Rivera's blood draw and her testimony that she performed "the procedure the same way every time." The medical technician testified that she would locate a vein in the arm and "wipe … down" the blood-draw site, using "skin prep that's provided in the [blood draw] kit." If, after getting the needle, she needed to relocate the vein, she would "palpate above the area where [she's] going to poke to find the vein." She conducted the procedure while wearing rubber gloves that were not "necessarily … sterile."

¶53     After the medical technician testified at trial, defense counsel later sought to ask the analyst from the state crime laboratory about the potential for "microorganisms" to contaminate a blood sample in a way that would skew the accuracy of blood alcohol test results. Although counsel was able to elicit some testimony regarding two particular microorganisms, the circuit court struck the testimony and prevented counsel from asking about hypothetical situations in which a specific contaminant was introduced to the blood sample. When the court asked how some of this questioning could be relevant based on the facts in evidence, defense counsel said that it related to the medical technician's testimony that she "touched [Herrera Rivera's] arm during the blood draw" "using non-sterile gloves." Defense counsel suggested that for all he knew, putting "a non-sterile object near the draw site" could cause contamination because it was

possible there was a contaminant on the gloves, and counsel argued that the jury should be allowed to consider this as a basis for reasonable doubt that the prosecution could prove the charges. The court ruled that there was not a sufficient basis to allow questioning regarding contamination because the medical technician testified that she merely touched near the blood-draw site, not on it. Implied in the court's reasoning was that there was no evidence showing that touching near, but not on, the blood-draw site could have introduced contaminants to the blood sample.

¶54     On appeal, Herrera Rivera fails to make a record-supported argument identifying an erroneous exercise of discretion in the circuit court's reasoning on the contaminants topic. He asserts that the medical technician "testified to following a standard procedure which involved touching the site of the blood draw with a non-sterile glove." But the circuit court reasonably interpreted the medical technician's testimony as stating that she did *not* touch the site of the blood draw. This provided the court with a discretionary basis to exclude testimony based on the contrary assumption that touching the draw site could have introduced contaminants. Herrera Rivera emphasizes that he has a constitutional right to "attack the reliability of the state's investigation and physical evidence" through cross-examination, but this does not relieve him of the burden on appeal to establish an erroneous exercise of discretion in preventing this particular line of cross examination. *See **Rhodes***, 336 Wis. 2d 64, ¶23.

### C. References to .02 Blood Alcohol Concentration Restriction

¶55     Herrera Rivera argues that the circuit court erroneously exercised its discretion in permitting the prosecutor to elicit from the officer testimony that Herrera Rivera was subject to a .02 prohibited alcohol concentration "restriction."

Herrera Rivera argues that these references created unfair prejudice at trial by creating an unacceptably high risk that the jury would infer from these references that he had prior OWI convictions, and as a result would impermissibly convict based on Herrera Rivera's propensity to drive drunk. *See* **State v. Warbelton**, 2009 WI 6, ¶¶43-45, 315 Wis. 2d 253, 759 N.W.2d 557 (nature of OWI offenses and "social stigma attached" to them render "'impossible or unlikely an impartial trial by jury'" if jurors are aware of prior OWI offenses (quoting **Singer v. United States**, 380 U.S. 24, 37-38 (1965))). The State argues that the references to the .02 restriction at issue did not suggest to an impermissible extent the existence of Herrera Rivera's prior OWI convictions. We conclude that, applying pertinent case law, the references to a .02 restriction, while seemingly unnecessary and therefore potentially problematic, did not result in unfair prejudice requiring reversal. We provide additional background regarding the references at issue followed by the pertinent standards.

¶56 **Additional Background.** Before trial, Herrera Rivera stipulated to the court that he had three prior OWI convictions, "which [were] countable under WIS. STAT. § 343.307(1) and which remain of record and unreversed." Under the law summarized *supra* n.2, this necessarily meant that he was subject to a .02 prohibited alcohol concentration at the time of the traffic stop in this case.

¶57 Before the evidence phase of the trial began, the circuit court informed the jury that the second count against Herrera Rivera alleged that he "drove a motor vehicle with a prohibited alcohol concentration of more than 0.02."

¶58 After this, out of the presence of the jury, defense counsel requested that the circuit court exclude testimony indicating that Herrera Rivera was subject to a .02 restriction. Counsel argued that such references would "impl[y] that

26

something caused" the restriction, that is, it would imply that he had committed prior OWI offenses. The court rejected this request, stating, "Absolutely the [.]02 restriction comes in." The court reasoned that the jury needed to know that the restriction existed in order "to know if [Herrara Rivera was] above" the .02 level for purposes of returning a verdict on the prohibited alcohol concentration count.

¶59 Defense counsel requested to make a record on this ruling, noting our decision in *State v. Diehl*, 2020 WI App 16, 391 Wis. 2d 353, 941 N.W.2d 272. Counsel was referencing discussion in that opinion emphasizing the importance of avoiding unnecessary testimony or argument at an OWI trial that risks giving rise to a potential inference by the jury that the defendant had driven while intoxicated in a charged incident because the defendant had one or more prior convictions and was subject to a prohibited alcohol restriction. The circuit court here responded that "the … words 'prior conviction' will not be uttered by any lawyer or witness," and stated the view that, in *Diehl*, it was such specific references to prior convictions that caused the problem.

¶60 During trial, the prosecution questioned the officer regarding his calling up information about Herrera Rivera in his squad car, using Herrera Rivera's license data:

> Q. Did you consult Wisconsin Department of Transportation records using the information from Mr. Herrera Rivera's Wisconsin driver's license?
>
> A. Yes.
>
> Q. Did you note any restriction on Mr. Herrera Rivera's license?
>
> A. Yes. He had a .02 alcohol restriction.
>
> Q. And what does that mean to you?

> A. That means an individual with that restriction can't operate a motor vehicle with a[n] alcohol content above .02.

¶61 Later at trial, the prosecutor and the officer had the following exchange:

> Q. You testified that you consulted Mr. Herrera Rivera's DOT records?
>
> A. Yes.
>
> Q. And that indicated he was subject to a .02 blood alcohol restriction?
>
> A. That's correct.
>
> Q. … [F]or a person subject to that .02 blood alcohol restriction, is a moving violation like speeding and the odor of intoxicants sufficient probable cause to initiate an arrest for operating with a prohibited alcohol concentration?

After the officer answered "Yes" to this last question, defense counsel objected. The circuit court, without prompting defense counsel to explain the basis for the objection, sustained the objection and declared that the answer was "stricken."

¶62 After the close of evidence, the court instructed the jury in pertinent part as follows regarding the charge of driving with a prohibited blood alcohol concentration:

> Section 346.63(1)(b) of the Wisconsin Statutes is violated by one who drives a motor vehicle on a highway with a prohibited alcohol concentration. Before you may find the defendant guilty of this offense, the State must satisfy you beyond a reasonable doubt that the following two elements were present: Number one, the defendant drove a motor vehicle on a highway; number two, the defendant had a prohibited alcohol concentration at the time the defendant drove a motor vehicle.

28

> Prohibited alcohol concentration means more than .02 grams of alcohol in 100 milliliters of the person's blood.

*See* WIS JI—CRIMINAL 2669.

¶63  **Legal standards.**  The decision whether to admit or exclude evidence is generally left to the circuit court's exercise of discretion.  ***State v. Alexander***, 214 Wis. 2d 628, 640, 571 N.W.2d 662 (1997).

¶64  In order to convict Herrera Rivera of driving with a prohibited alcohol concentration as a fourth offense, the prosecution bore the burden to prove beyond a reasonable doubt that he had three prior convictions that were countable under WIS. STAT. § 346.307(1).  *See **Diehl***, 391 Wis. 2d 353, ¶11.  This element is "the 'status element' of the offense since its sole purpose was to place the defendant in a 'certain category of alleged offenders' with a lower [prohibited alcohol concentration] than other drivers."  ***Id.*** (quoting ***Alexander***, 214 Wis. 2d at 644).

¶65  Thus, due to his prior convictions, the prosecution had to show that Herrera Rivera had a prohibited alcohol concentration of .02 while operating his car in order to prove the prohibited alcohol concentration charge.  *See **id.***, ¶17 (citing ***State v. Krancki***, 2014 WI App 80, ¶20, 355 Wis. 2d 503, 851 N.W.2d 824).  However, "once a defendant stipulates to his or her prior OWI convictions, any probative value of evidence of those convictions is 'substantially outweighed by the danger of unfair prejudice,' and a circuit court erroneously exercises its discretion by admitting such evidence."  ***Id.***, ¶13 (quoting ***Alexander***, 214 Wis. 2d at 651; *see also* WIS. STAT. § 904.03 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ….").  The case law emphasizes that the danger in allowing the jury to

29

hear references to prior convictions in this context is that this easily invites impermissible inferences that the defendant's multiple prior convictions are probably related to drinking and driving, that the charged offense is therefore part of a "'pattern of behavior,' and that, 'even if the defendant is not guilty on the particular occasion charged, the defendant likely committed the same offense on many other occasions without being caught.'" *Diehl*, 391 Wis. 2d 353, ¶25 (quoting *Warbelton*, 315 Wis. 2d 253, ¶47). Moreover, whether the defendant is subject to the default prohibited alcohol concentration of .08 is not relevant to whether the defendant in fact drove with a blood alcohol concentration above .02 on a specified occasion. *See id.*, ¶17; WIS. STAT. § 904.02 ("Evidence which is not relevant is not admissible.").

¶66      Herrera Rivera argues that testimony regarding whether he was under a "restriction" on his license that subjected him to a .02 prohibited alcohol concentration was irrelevant given that he had stipulated to having prior convictions and that the jury was instructed that it had to decide whether Herrera Rivera operated the car that was stopped with a blood alcohol concentration above the .02 limit. We do not agree that the officer's testimony regarding the existence of a restriction was irrelevant—again, in order to prove that Herrera Rivera drove with a prohibited concentration of alcohol in his blood, the prosecution had to establish what that prohibited concentration was. *See Diehl*, 391 Wis. 2d 353, ¶17 ("To be sure, the fact that Diehl's PAC was .02 was relevant, since the jury would have to find that his blood alcohol concentration exceeded that standard to convict him.").

¶67      Nevertheless, Herrera Rivera's argument has the starting point that the prosecution did not need to elicit the specific testimony quoted above from the officer, because the jury was simply and adequately instructed that the applicable

30

prohibited alcohol concentration at trial was .02. *See id.*, ¶17 n.7 (noting that in *Alexander*, 214 Wis. 2d at 646-47, the defendant's stipulation regarding prior convictions resulted in his "giv[ing] up his right to a trial" on the applicable prohibited alcohol concentration and that it is presumed that the jury will follow instructions). Put differently, Herrera Rivera could be understood to argue that, although technically relevant, the testimony referencing his "restriction" was at best offered merely in support of a finding of fact that the jury was going to be directed to make and therefore it was entirely cumulative and prejudicial enough to require exclusion under WIS. STAT. § 904.03.

¶68 We observe that the prosecution here approached a danger zone by eliciting this unnecessary testimony. It may not have taken much additional testimony or argument carrying a risk of prejudice along these lines to tip the scales to a reverse, under the reasoning in such opinions as *Alexander*, *Krancki*, and *Diehl*. Herrera Rivera was entitled to a fair trial. In light of the stipulation, the prosecution was required to protect this fair-trial right by scrupulously preparing witnesses and framing questioning and argument in this area to actively avoid what could amount to an invitation to convict a defendant based on assumptions about the defendant's history as a driver, not on the relevant evidence regarding the charged incident.

¶69 But we are not persuaded that the circuit court erroneously exercised its discretion in allowing the specific testimony at issue. While cumulative to the information that the prosecution knew the jury was already receiving from the court, the officer's response to the questioning regarding the restriction essentially echoed what was already apparent in jury instructions to which Herrera Rivera did not object at trial—that the prohibited alcohol concentration applicable to Herrera Rivera was .02. The officer's testimony stopped short of explicitly noting the

difference between the .02 restriction applicable here and the default .08 restriction. *Cf. **Diehl***, 391 Wis. 2d 353, ¶¶6, 17 ("during the direct examination of the officer, the prosecutor emphasized the difference between the PAC restriction that Diehl was subject to and the 'normal' PAC," which was not relevant). Further, unlike in ***Diehl***, there was no testimony here that directly referenced Herrera Rivera having prior convictions. *See **id.***, ¶¶7, 24 (prosecution elicited testimony from defendant regarding his having two prior convictions in the context of being questioned about the .02 prohibited alcohol concentration, giving rise to inference that defendant had been convicted of OWI offenses); *see also **Krancki***, 355 Wis. 2d 503, ¶20 (distinguishing ***Alexander*** because "the State did not admit evidence of Krancki's prior OWI convictions").

¶70 Herrera Rivera argues that, even in the absence of more direct references to his prior convictions, there was nonetheless too great a risk that the jury would infer that he had prior OWI convictions. He rests this argument on the following. First he notes the "general proposition" that "every person, sophisticated or otherwise, is presumed to know the law," citing ***Tri-State Mechanical, Inc. v. Northland College***, 2004 WI App 100, ¶10, 273 Wis. 2d 471, 681 N.W.2d 302. From this, he argues that the jurors here should have been presumed to know that there were two possible reasons for Herrera Rivera to have been subject to .02 prohibited alcohol concentration instead of the widely known default prohibition level of .08. Specifically, jurors could be expected to know that he had been either (1) subject to an "ignition interlock order" for "improperly refusing" to take a test for blood alcohol concentration under WIS. STAT. § 343.305 or having one or more offenses relating to drunk driving or handling of a weapon while intoxicated; or, (2) had three or more "prior convictions, suspensions or revocations, as counted" under WIS. STAT. § 343.307(1). *See* WIS.

STAT. § 340.01(46m)(c) (defining "prohibited alcohol concentration," in some circumstances, as "0.02").

¶71 But the balance set by cases such as *Alexander*, *Krancki*, and *Diehl* does not require us to reverse a conviction whenever a jury might be able to infer that the defendant has prior OWI convictions based on a .02 status. Otherwise, trials under the lower restriction would be difficult if not impossible to conduct. In sum, the prosecution here asked questions it would have been prudent not to ask, but the circuit court did not erroneously exercise its discretion in allowing the limited references to a .02 "restriction," even though the references were unnecessary.

## CONCLUSION

¶72 For all of these reasons, we affirm the judgment of the circuit court.

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.